404:87 F

[S. F. No. 299.   Department One.—October 3, 1896.]

JOHN J. CONLIN, APPELLANT, v. THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENTS.

CONSTITUTIONAL LAW — LEGISLATIVE CONTROL OF MUNICIPAL FUNDS — RELIEF OF CLAIMANT AGAINST MUNICIPALITY — LOCAL AND SPECIAL LEGISLATION.—The legislature has no power to control municipal funds for any other than municipal purposes, nor can it make or direct an appropriation thereof for the relief of a claimant against the municipality who has no enforceable claim against it, nor pass any special or local law directing money to be paid to any individual out of the funds of a particular municipality, whether the payment be in satisfaction of an enforceable obligation or not, or whether the claim be liquidated or unliquidated, or be judicially determined to be a valid claim or not, such law being in violation of section 25 of article IV of the constitution, forbidding local and special legislation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   D. J. MURPHY, Judge.

The facts are stated in the opinion of the court.

*Rodgers & Paterson*, and *Edward R. Taylor*, for Appellant.

Inasmuch as the statute, on its face, does not show for what service or property the city and county of San Francisco is liable to John J. Conlin, such matter will not be inquired into by the court.   (*Stevenson* v. *Colgan*, 91 Cal. 649; 25 Am. St. Rep. 230; *Rankin* v. *Colgan*, 92 Cal. 606; *Bourn* v. *Hart*, 93 Cal. 326; 27 Am. St. Rep. 203.)   The court will presume that the act deals with a matter not purely local.   (*Park Commrs.* v. *Detroit*, 28

Mich. 228; 15 Am. Rep. 202; *People* v. *Batchelor*, 53 N. Y. 128; 13 Am. Rep. 480; *Simon* v. *Northup*, 27 Or. 487; *Revell* v. *Mayor*, 81 Md. 1; 1 Dillon on Municipal Corporations.)    Upon the power of the legislature to appropriate municipal funds for a public purpose, see *Conlin* v. *Board of Supervisors*, 99 Cal. 21; 37 Am. St. Rep. 17; *People* v. *Burr*, 13 Cal. 343; *People* v. *Pacheco*, 27 Cal. 175; *Creighton* v. *San Francisco*, 42 Cal. 450; *Matter of Market Street*, 49 Cal. 549.    The act does not violate any provision of the constitution.    It does not regulate county or township business.    It does not purport upon its face to direct the payment of money for any services or property devoted to municipal purposes, and the court will not go behind the act to inquire as to the expediency or policy of the statute.    (Const., art. IV, sec. 25, subds. 9, 33; *People* v. *Fleming*, 10 Colo. 553; *County of Livingston* v. *Darlington*, 101 U. S. 407; *In re Madera Irr. Dist.*, 92 Cal. 307; *Mount* v. *State*, 90 Ind. 29; 46 Am. Rep. 192; *Montgomery* v. *Commonwealth*, 91 Pa. St. 132; *Van Riper* v. *Parsons*, 40 N. J. L. 3; *Revell* v. *Mayor, supra; Youngs* v. *Hall*, 9 Nev. 212; *People* v. *McFaddin*, 81 Cal. 498; 15 Am. St. Rep. 66; *Board etc.* v. *Supervisors*, 99 Cal. 573; *State* v. *Hitchcock*, 1 Kan. 178; *Worthley* v. *Steen*, 43 N. J. L. 542; 20 Am. & Eng. Ency. of Law, 723, note and cases; *McConvill* v. *Mayor*, 39 N. J. L. 38–44; *State* v. *Vic. De Bar*, 58 Mo. 395; *Harvey* v. *United States*, 3 Ct. of Cl. 42.)

*Harry T. Cresswell, City and County Attorney*, for Respondents.

The act is unconstitutional, as it is local and commands only the board of supervisors, the auditor, and the treasurer of the city and county of San Francisco. (*State* v. *Kring*, 74 Mo. 624; *People* v. *Hills*, 35 N. Y. 449.)    And it is special, as it applies to John J. Conlin alone.    It creates an exception to the general rule in that it commands the board of supervisors to order paid, the auditor to audit, and the treasurer to pay, the money therein named, without being satisfied that it is legally

due and remains unpaid, or that the payment thereof is authorized by law, and out of what fund. (Consolidation Act, secs. 85, 86; Const., art. IV, sec. 25; Nev. Const., art. IV, sec. 20; *Williams* v. *Bidleman,* 7 Nev. 70; *Montgomery* v. *Commonwealth,* 91 Pa. St. 132.) It seeks to regulate the business of the city and county of San Francisco. (*Youngs* v. *Hall,* 9 Nev. 217; *Williams* v. *Bidleman, supra; Montgomery* v. *Commonwealth, supra;* Webster's Dictionary, tit. "Regulate"; *State* v. *Ream,* 16 Neb. 683; *Gibbons* v. *Ogden,* 9 Wheat. 140; Const., art. IV, sec. 25, subd. 28.) The constitutional inhibition contained in subdivision 9 of section 25, article IV, applies to the city and county of San Francisco. (Const., art. XI, sec. 7; *Dougherty* v. *Austin,* 94 Cal. 601; *Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 645.)

Harrison, J.—At the last session of the legislature the following act was passed March 28, 1895 (Stats. 1895, p. 348):

"Section 1. The board of supervisors of the city and county of San Francisco is hereby authorized and directed to order paid to John J. Conlin, or his assigns or legal representatives, the sum of sixty-one thousand five hundred and seventy-seven ($61,577) dollars.

"Sec. 2. The auditor of said city and county of San Francisco is hereby authorized and directed to audit the demand for the said sum of money named in section 1, and to issue his warrant therefor to John J. Conlin, his assigns or legal representatives; and the treasurer of said city and county is hereby directed to pay said demand and warrant for said sum of money upon presentation therefor.

"Sec. 3. This act shall take effect immediately."

The appellant thereafter presented his claim to the board of supervisors for said sum of money, together with a duly authenticated copy of said act, and demanded that the same be allowed and ordered paid. The board of supervisors refused to allow the same, and thereupon the plaintiff made application to the superior court for a

writ of mandate compelling said board to allow the claim. A demurrer to his petition was sustained by the superior court, and from the judgment entered thereon the present appeal has been taken.

The validity of this act is assailed by the respondents upon the ground that the legislature has not the power to direct the payment of moneys out of the treasury of the city and county of San Francisco, against its will, or without its consent. It is conceded by the appellant that the legislature has not the power to direct or command the municipality to make a gift of its funds, but it is contended on his behalf that the legislature has such control over these funds that it may appropriate them for any public purpose, and that, as courts cannot look outside of the act making such appropriation, but must determine the character of the appropriation from the terms of the act alone, it is to be presumed that the legislature made the appropriation for a public purpose; that, if the legislature had the power under any circumstances to pass the act in question, it must be assumed that the circumstances existed in the present case and authorized its passage. In support of this proposition are cited *Stevenson* v. *Colgan*, 91 Cal. 649, 25 Am. St. Rep. 230, and *Rankin* v. *Colgan*, 92 Cal. 606. These cases, however, involved the power of the legislature to appropriate money from the state treasury, and did not touch upon the power of the legislature to deal with the moneys in the treasury of a municipal corporation. Assuming, however, that the legislature may appropriate the funds in the state treasury for any public purpose, it does not follow that it has the same power over municipal funds. While the funds in a municipal treasury are in a certain sense public, they are so only for the limited public which has contributed them, but not for the entire state, and the power of the legislature over these funds is not coextensive with its power over the state funds, but is limited by certain provisions of the constitution.

We are not aware that it has ever been held, and coun-

sel for appellant has not cited us to any authority in support of the proposition, that the legislature has power to appropriate the funds of a municipality to the discharge of an obligation against the entire state, or to direct the payment of such funds for any other purpose than pertains to the municipality itself. Mr. Cooley, in his treatise on Taxation, page 700, lays down the rule in the following language: "All the property of a municipal corporation may be assumed to come from taxation. It is public property, but public for the purposes of the municipality, and not for purposes of the state. If, in fact, it has been raised for special purposes under state authority, the state may compel its proper application. The state must have a power of direction also in cases where municipal powers are so modified as to preclude the contemplated purpose being followed; but it is believed to be an unsound doctrine that the legislature of the state may, for that reason or any other, apply it to state uses, or even to local uses, against the consent of the people concerned." (See, also, Cooley's Constitutional Limitations, 6th ed., 283, et seq; Dillon on Municipal Corporations, sec. 75.) It was never held under the former constitution of this state that the legislature had unlimited control of the moneys in a municipal treasury, or that it could direct their appropriation to other than municipal purposes. Certainly, it was never contended that the legislature could cause such funds to be transferred to the state treasury and be made a part of the state funds; and there can be no distinction in principle between such power and the power to direct their payment for a state obligation or purpose. In *Blanding* v. *Burr*, 13 Cal. 351, it was said: "The power of appropriation which the legislature can exercise over the revenues of the state for any purpose which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town *for any purpose connected with their present or past condition*, except as such revenues may by the law creating them be devoted to special purposes." In *Sinton* v. *Ashbury*,

41 Cal. 525, the act was upheld upon the ground that the purpose for which the money was to be paid was a municipal purpose, and the further ground that "the legislature has the constitutional power to direct and control the affairs and property of a municipal corporation *for municipal purposes*, provided it does not impair the obligation of a contract, and, by appropriate legislation, may so control its affairs as ultimately to compel it out of the funds in its treasury, or taxation to be imposed for that purpose, to pay a demand when properly established which in good conscience it ought to pay, even though there be no legal liability to pay it"; and, in giving the opinion of the court, Mr. Justice Crockett said: "I am not aware that any case has gone so far as to hold that the legislature may devote the funds of a municipal corporation to purposes confessedly private, and *having no relation to municipal affairs*." The statute involved in *Creighton* v. *San Francisco*, 42 Cal. 446, was sustained upon the principle that "Where an individual has no legal claim in the sense of being capable of an enforcement by judicial proceedings against a municipal government, he has, nevertheless, in equity and justice, in the larger sense of those terms, a right to indemnity and compensation out of the public treasury." The principle by which these cases were governed was fully illustrated in *Hoagland* v. *Sacramento*, 52 Cal. 142, where the converse rule was enforced, and it was held that the legislature could not compel a city to pay a claim against it for which it was under no moral or equitable obligation, saying: "While the legislative power may, as it frequently does, interpose to furnish a remedy or remove an impediment which prevents the enforcement of a legal or equitable right or duty already existing, it cannot even against a municipal corporation create a claim without the consent of those who are to be taxed with its payment. Such a procedure, while taking on the form of a statutory enactment, would amount to mere spoliation."

The power of the legislature to appropriate any of

the public moneys in the state treasury, or to direct the appropriation of the public moneys of a municipality in cases like the foregoing, was taken away by the present constitution, and it can now make no appropriation of public moneys for which there is no enforceable claim, or upon a claim which exists merely by reason of some moral or equitable obligation, which, in the mind of a generous or even a just individual, dealing with his own moneys, might prompt him to recognize as worthy of some reward. (*Conlin* v. *Board of Supervisors*, 99 Cal. 17; 37 Am. St. Rep. 17.) It was held in this case that the legislature holds the public moneys in trust for public purposes, and under this limitation of the constitution can make no disposal of these funds except in accordance with such purposes; that it has no authority to appropriate public moneys for purposes for which there is no legal or equitable obligation, and can no more direct a municipality to make a gift of the public moneys in its treasury than could the municipality make the gift without such direction.

As, therefore, the legislature is precluded from directing a gift of municipal funds, and as any appropriation of moneys for which there is not a legal and enforceable claim falls within the meaning of this term as used in the constitution, it follows that, even if it be conceded that the legislature has any control over municipal funds, the only circumstances under which it could direct their payment would be for some municipal purpose, or in satisfaction of some valid claim against a municipality. It must, therefore, be assumed, for the purpose of sustaining the validity of the act in question, that the legislature directed the money to be paid to the appellant in satisfaction of some obligation of the municipality. Such a statute would, however, be in direct violation of the constitutional limitations upon the power of the legislature. Section 25 of article IV of the constitution declares that the legislature shall not pass any special or local law regulating county and township business, or prescribing the powers and duties

of officers in cities and counties, or in any case where a general law can be made applicable. The act in question is both special and local. It is special in that it is applicable to a single individual and to a single transaction. It is local in that by its terms it is applicable to only one place, viz., San Francisco. That it is an attempt to regulate the business of San Francisco is equally apparent. To " regulate," as here used—a word derived from the latin word *rego*, signifying to guide or direct, through the noun *regula*, a rule—is to prescribe a rule for acting, to direct the mode in which a transaction shall be conducted. The act in question directs the mode in which the money named therein shall be transferred from the city treasury to appellant. It prescribes the exact amount to be paid, directs the board of supervisors to order it paid to the appellant, and the auditor to audit and the treasurer to pay his demand for this amount of money. As the public moneys can be transferred from the treasury to an individual only in connection with some public transaction and for some public purpose, such transfer is of necessity a part of the public business, and a law prescribing the mode by which the transfer may be effected is a law regulating such business. It is none the less a regulation of business because it is limited to a single transaction. It is as much a regulation of business to prescribe the mode in which a single transaction shall be conducted as to prescribe a rule for conducting all transactions. If the legislature can direct this payment to the appellant, it can also direct the payment of every claim against the municipality, and upon the same principle can direct the payment of any claim against every municipal body in the state. That this would be a regulation of municipal business throughout the state cannot be denied, and that each of the acts authorizing payment would be a part of such regulation and in contravention of the constitution is equally apparent. A law limited to a single transaction is as much within the constitutional limitation upon the power of the legislature as would

be a law applicable to more than one transaction, and a rule which would uphold a law limited to a single transaction would necessitate the upholding of a law which embraced any number of transactions less than the entire business of the municipality. A similar question was presented in *Williams* v. *Bidleman*, 7 Nev. 68. The constitution of Nevada contained the same provision on this subject as is contained in the constitution of this state, and an act was passed by the legislature directing the county of Lander to pay a certain claim. It was held that the act was within the constitutional provision, and to the contention of counsel that, as the act was limited to a special case, it was not a regulation of business within the meaning of the constitution, the court said: "We think this statute is clearly a regulation of business. Any law prescribing a rule to govern business, or an order or direction for its management, is a regulation of that business, whether it be a limited and temporary law, intended to secure a particular end or object, or a general and permanent law, according to the provisions of which all county affairs are to be conducted." (See, also, *Montgomery* v. *Commonwealth*, 91 Pa. St. 125.)

Whether the claim of the appellant for which payment is directed is liquidated or unliquidated is immaterial. If it is unliquidated, the legislature is not authorized to determine the amount, and direct its payment against the will or without the consent of the city. Such an act would be to exempt the appellant from the general law requiring a judicial determination of his claim before he could demand its payment. If it be assumed that the payment is to be made for a public purpose, and in satisfaction of a claim that has been judicially determined to be a valid claim in favor of the plaintiff and against the city, the act is none the less a regulation of the business of San Francisco, and a special law exempting the plaintiff from the general law requiring all claimants against the city to enforce their claims by proceedings in the courts of the state.

The act, moreover, prescribes the duties of the several officers named therein, and imposes upon them duties different from those which they are required to perform in all other instances in which the public money is to be paid.   In all other cases the board of supervisors are prohibited from ordering the payment of any claim, and the auditor from approving, and the treasurer from paying, the same, unless presented in a particular form, and the auditor before approving, and the treasurer before paying, any claim, are required to examine into its validity, and to satisfy themselves whether the same is a valid charge against the city and county.   But by the act in question these provisions of the general law applicable to all other claimants are dispensed with and the legislature has peremptorily directed these officers to audit and pay the claim without any such examination, and irrespective of the result of whatever examination they may make.   The act thus prescribes a special rule for the duties of these officers in this cases, and takes from them the right of acting in accordance with the general rule prescribed for all other payments of money.

The judgment is affirmed.

Garoutte, J., and Van Fleet, J., concurred.

Hearing in Bank denied.