[S. F. No. 4762. In Bank.—July 1, 1907.]

## GEORGE B. GRAHAM, Petitioner, v. MAYOR AND BOARD OF TRUSTEES OF THE CITY OF FRESNO, Respondents.

MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—JUSTICES' COURTS—PAYMENT OF SALARY OF JUSTICES AND OFFICE EXPENSES BY CITY.—Prior to the adoption in 1896 of the municipal affairs amendment to section 6 of article XI and of section 8½ of article XI of the constitution, and by reason of section 1 of article VI thereof, providing that the judicial power of the state shall be vested in certain courts therein named, ''justices of the peace, and such inferior courts as the legislature may establish in any incorporated city or town, or city and county,'' section 11 of the same article, providing that the legislature shall determine the number of justices of the peace to be elected in townships, incorporated cities and towns, or cities and counties, and fix by law the powers, duties, and responsibilities of such officers, and section 13 of article VI, providing that the legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of that article, and fix by law the powers, duties, and responsibilities of the judges thereof, the whole matter of the establishment and regulation of justices and other inferior courts in cities and towns, and the compensation of the judges thereof, was in the hands of the legislature, and such laws as section 103 of the Code of Civil Procedure, providing, among other things, for the election of one justice of the peace in cities of the fourth class, whose salary and office were required to be paid and provided for by the municipality, were a valid exercise of the legislative power.

ID.—JUSTICES' COURTS PART OF STATE JUDICIAL SYSTEM—POWER OF LEGISLATURE RESPECTING.—Justices of the peace are part of the constitutional judicial system of the state, having concurrent jurisdiction with superior courts in certain matters expressly given by the constitution (art. VI, sec. 11), and also having such jurisdiction in civil and criminal cases as is given by the general laws of the state to all justices of the peace. In this regard there is no distinction whatever between township and city justices, and it is immaterial that the legislature has attempted to confer upon city justices an additional jurisdiction in matters peculiar to the city, such as cases arising from violations of municipal ordinances, etc. The constitution, by section 11 of article VI, in terms provides that the legislature shall determine the number of such justices of the peace to be elected in townships, incorporated cities and towns, or cities and counties, and shall fix by law the powers, duties, and responsibilities of such office.

CLI Cal.—30

ID.—CONSTITUTIONAL AMENDMENTS OF 1896—FREEHOLDERS' CHARTER—POLICE COURTS.—The provisions of subdivision 1 of section 8½ of article XI of the constitution, as amended in 1896, authorizing a freeholders' charter of a city, adopted under the authority given by section 8 of that article, to provide "For the constitution, regulation, government, and jurisdiction of police courts, and for the manner in which, the times at which, and the terms for which the judges of such courts shall be elected or appointed, and for the compensation of said judges and of their clerks and attachés," being limited in terms to police courts, did not restrict in the slightest degree the power of the legislature to provide for justices' courts in cities and towns, as part of the general state system of justices' courts.

ID.—FUNCTIONS OF POLICE COURTS—JURISDICTION.—The ,term "police court" ordinarily refers to an inferior municipal court with a limited jurisdiction in criminal cases only, with the power to try certain misdemeanor cases arising from the violation of state law or municipal ordinance, and to conduct preliminary examinations in cases of felony and certain misdemeanors, and to hold defendants to answer for trial for the same, and does not include the justices' courts established by our law. The term, as used in section 8½ of article XI of the constitution, also probably includes such inferior courts as may properly be held to be purely municipal, though given by the state certain jurisdiction in state as distinguished from municipal matters, courts coming within the class specified in the constitution as "such inferior courts as the legislature may establish in any incorporated city or town or city and county," such as a city recorder's court or a mayor's court.

ID.—MUNICIPAL AFFAIRS — LEGISLATURE HAS NO JURISDICTION OVER POLICE COURT UNDER FREEHOLDERS' CHARTER.—The effect of subdivision 1 of section 8½ of article XI of the constitution, as amended in 1896, was to make the matter of such police courts purely a municipal affair as to any city having a freeholders'. charter, which subsequently made appropriate provision in its charter for such courts. Jurisdiction as to such courts could not coexist in both the legislature and the city, and the provision for the assumption of such jurisdiction by the city necessarily contemplated the removal of the same from the legislature whenever the jurisdiction was assumed by the city; and any act of the legislature relative to such subject-matter would necessarily be inconsistent with a charter provision in regard to the same subject-matter. As to such matters as the constitution authorizes to be provided for in freeholders' charters, the provisions of the charter are supreme, under section 6 of article XI of the constitution, superseding all laws inconsistent therewith, and being exempt from any control by any subsequent act of the legislature.

ID.—PAYMENT OF JUSTICE'S SALARY AND EXPENSES BY MUNICIPALITY.—Since the said constitutional amendments of 1896 for a city main-

taining a police court under valid provisions therefor in its free-
holders' charter, the legislature no longer has the power to provide
such a court.    While it still has the power to provide a justice's
court for any such city as part of the general state system of
justices' courts, it no longer has the power to make such court
also a city police court, maintainable at the expense of the city.
As to such cities, the city justice of the peace provided for by
section 103 of the Code of Civil Procedure is the same in all respects
as a township justice, simply a county or township officer perform-
ing no municipal function; and as to such city justices, the
legislature has no power to direct the appropriation of municipal
funds for the payment of their salary or office expenses, and as
to them the provision of section 103 of the Code of Civil Procedure,
requiring the city to furnish them with a suitable office, is no
longer applicable.

APPLICATION for a Writ of Mandate to the Mayor and
Board of Trustees of the City of Fresno.

The facts are stated in the opinion of the court.

George B. Graham, *in pro. per.*, for Petitioner.

D. S. Ewing, and Frank Karke, for Respondents.

ANGELLOTTI, J.—The city of Fresno is a city organized
under a freeholders' charter framed and adopted under the
provisions of section 8 of article XI of the constitution of this
state, and approved by the legislature on January 28, 1901,
(Stats. 1901, p. 832).   According to the federal census of 1900,
it has a population of more than ten thousand and less than
fifteen thousand, and therefore if we assume that the provisions
of the General Classification Act, as amended March 5, 1901,
(Stats. 1901, p. 94,) apply, it is a city of the fourth class
within the meaning of section 103 of the Code of Civil Pro-
cedure.   Its charter provides for a court to be known as the
"police court of the city of Fresno," the same to consist of one
judge, to be elected at the general municipal election, who shall
receive a salary from and be furnished with a courtroom by the
city, which court shall have exclusive jurisdiction in all prose-
cutions for violations of city ordinances and actions for the
recovery of fines, etc., and the enforcement of obligations or
liabilities created by the city ordinances, and, within the city
limits, concurrent jurisdiction with township justices' courts

in all matters wherein said justices' courts may have jurisdiction. (Charter, secs. 60, 61, 62, 68, 200, 221.) Under these provisions a police court has been established and is now being maintained in the city, one H. F. Briggs being the judge thereof. The city of Fresno constitutes a portion of the third judicial township of the county of Fresno. At the general state election held November 6, 1906, the plaintiff, George B. Graham, was elected "city justice of the city of Fresno," and qualified in the manner required of justices of the peace. He claims that it is the duty of the defendants to furnish him, as such city justice, with a suitable office wherein to hold his court. Defendants have refused to comply with his demand in this regard, and plaintiff has instituted this proceeding to obtain a peremptory writ of mandate compelling such compliance.

Plaintiff's claim is based on section 103 of the Code of Civil Procedure, the general section providing for justices' courts, their number in townships and cities, their election, etc. That section, after providing for the justices of townships to be elected at a general state election, provides that "in every city or town of the third and the fourth class there must be one justice of the peace, . . . to be elected in like manner by the electors of such cities or towns respectively." It further provides that such justice of the peace of cities or towns shall have the same jurisdiction, civil and criminal, as justices of the peace of townships, and also jurisdiction of all proceedings for the violation of any ordinance of a city, and all actions for the recovery of any licenses required by any ordinance of the city, and shall exercise all powers, duties, and jurisdiction, civil and criminal, of "police judges, judges of the police court, recorder's court, or mayor's court within such city." It further provides that every city justice of the peace in any city or town of the fourth class shall receive as his sole compensation a salary of fifteen hundred dollars per annum from the salary fund of such city or town, and shall be provided by the city authorities with a suitable office in which to hold his court, and requires him to pay into the city or town treasury all fees chargeable by law for services rendered by him.

Prior to the adoption of certain constitutional amendments in 1896, it was established that, by reason of section 1 of article VI, providing that the judicial power of the state shall be

vested in certain courts therein named, ''justices of the peace, and such inferior courts as the legislature may establish in any incorporated city or town, or city and county,'' section 11 of the same article providing that the legislature shall determine the number of justices of the peace to be elected in townships, incorporated cities or towns, or cities and counties, and shall fix by law the powers, duties, and responsibilities of such officers, and section 13 of article VI, providing that the legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section one of the article, and fix by law the powers, duties, and responsibilities of the judges thereof, the whole matter of the establishment and regulation of justices and other inferior courts in cities and towns, and the compensation of the judges thereof, was in the hands of the legislature, and that such laws as section 103 of the Code of Civil Procedure constituted a valid exercise of the legislative power. (*People* v. *Cobb,* 133 Cal. 74, [65 Pac. 325]; *People* v. *Sands,* 102 Cal. 12, [36 Pac. 404]; *Coggins* v. *City of Sacramento,* 59 Cal. 599; *Jenks* v. *Council,* 58 Cal. 576; *Bishop* v. *Council,* 58 Cal. 572.) In *Bishop* v. *Council,* 58 Cal. 572, a writ of mandate was granted to compel the city authorities to furnish such a city justice, elected at a general state election, with a suitable office. In *Jenks* v. *Council,* 58 Cal. 576, a similar writ was granted requiring the payment of the salary of such a justice from the city treasury. In *Coggins* v. *City of Sacramento,* 59 Cal. 599, an action by a city justice against the city for salary and office rent was sustained; and by *People* v. *Sands,* 102 Cal. 12, [36 Pac. 404], and *People* v. *Cobb,* 133 Cal. 74, [65 Pac. 325], it was thoroughly established that such justices are to be elected in the same manner as other justices of the peace, at a general state election, and that vacancies in the office are to be filled in the manner prescribed by the state law. It was further established that a police court created by the provisions of a freeholders' charter was not a court created by the legislature, and therefore that it was not competent to provide therefor in such a charter. (*People* v. *Toal,* 85 Cal. 333, [24 Pac. 603]; *Ex parte Ah You,* 82 Cal. 339, [22 Pac. 929]; *People* v. *Sands,* 102 Cal. 12, [36 Pac. 404].)

Defendants' claim is that by reason of certain constitutional amendments made in the year 1896, not only is the charter

provision for a police court of the city valid and effectual, which is admitted, but that the provision of section 103 of the Code of Civil Procedure for a city justice of the peace cannot be held applicable, and especially that the provisions of said section for the payment of a salary to such justices from the city treasury and the furnishing of an office at the cost of the city are without force as to said city. The constitutional amendments relied on are, first, the municipal affairs amendment of section 6 of article XI, and, second, section 8½ of article XI. The latter section adopted November 3, 1896, so far as applicable, is as follows: "It shall be competent in all charters framed under the authority given by section eight of article eleven of this constitution, to provide, in addition to those provisions allowable by this constitution, and by the laws of the state, as follows: 1. For the constitution, regulation, government, and jurisdiction of police courts, and for the manner in which, the times at which, and the terms for which the judges of such courts shall be elected or appointed, and for the compensation of said judges and of their clerks and attachés."

We cannot find in subdivision 1 of section 8½ of article XI any intention to interfere with the power of the legislature in the matter of provision for justices of the peace for cities and towns. That subdivision is limited in terms to "police courts," and there is no mention whatever therein of justices of the peace or justices' courts. The term "police court" ordinarily refers to an inferior municipal court with a limited jurisdiction in criminal cases only, a court with the power to try certain misdemeanor cases arising from the violation of state law or municipal ordinance, and with the power to conduct preliminary examinations in cases of felony and certain misdemeanors, and to hold defendants to answer for trial for the same, and does not include the justices' courts established by our law. The term should probably be here construed to also include such inferior courts as may properly be held to be purely municipal, though given by the state certain jurisdiction in state as distinguished from municipal matters, courts coming within the class specified in the constitution as "such inferior courts as the legislature may establish in any incorporated city or town or city and county," such as a city recorder's court or a mayor's court. (See *Ex parte Soto,* 88 Cal. 624, 626, [26

Pac. 530].)   But the city justice of the peace provided for by section 103 of the Code of Civil Procedure does not come within this category.   (*People* v. *Sands*, 102 Cal. 12, [36 Pac. 404] ; *People* v. *Cobb*, 133 Cal. 74, [65 Pac. 325].)   Justices of the peace are part of the constitutional judicial system of the state, having concurrent jurisdiction with superior courts in certain matters expressly given by the constitution (article VI, sec. 11), and also having such jurisdiction in civil and criminal cases as is given by the general laws of the state to all justices of the peace.   In this regard there is no distinction whatever between township and city justices.   (See cases last cited.)   A city justice is simply a part of this general state system, elected for a certain subdivision thereof.   It is immaterial in this connection that the legislature has attempted to confer upon city justices an additional jurisdiction in matters peculiar to the city, such as cases arising from violations of municipal ordinances, etc.   The constitution in terms provides that the legislature shall determine the number of such justices of the peace to be elected in townships, incorporated cities and towns, or cities and counties, and shall fix by law the powers, duties, and responsibilities of such office.   (Art. VI, sec. 11.)   In view of the explicit provisions of the constitution as to justices of the peace for cities and towns as well as townships and cities and counties, and the decisions of this court in regard thereto, it is inconceivable that this amendment, limited in terms to police courts, was intended to trench in the slightest degree upon the power of the legislature to provide for justices' courts in cities and towns as part of the general state system of justices' courts, and we cannot give it any such effect.

It does not follow, however, that the provisions of section 103 of the Code of Civil Procedure, as to the payment of the salary of such a city justice from the municipal treasury and the furnishing to him of an office by the municipality, will be held valid as to a city having a police court established under a valid charter provision.   The decisions heretofore cited sustaining the statutory provisions in that behalf were all cases decided prior to the adoption of the constitutional amendments, and at a time when, as we have already seen, no effectual provision for any court could be made in such a charter. The city justice of the peace established by the legislature has always been given, in addition to the ordinary jurisdiction of

a justice's court, the power and jurisdiction of an ordinary police court of a city, the expense of maintenance of which has always been considered a proper charge on the city, and his office thus partook of the character of both a county and township office and a city office. (*People* v. *Sands,* 102 Cal. 12, [36 Pac. 404]; *People* v. *Cobb,* 133 Cal. 74, [65 Pac. 325].) The legislature having had prior to the amendments the sole power to provide such a police court in a city or town, also had the power to provide for the maintenance of the same by the city or town; and the city justice's court being the court invested by the legislature with that jurisdiction, and thus, in effect, made also a city police court, the legislature was authorized to require the expense thereof to be borne by the municipality.

The effect of subdivision 1 of section 8½ of article XI was to make the matter of such police courts purely a municipal affair as to any freeholders' charter city which subsequently made appropriate provision in its charter for such court. It confided the subject-matter of such courts, and the election and compensation of the judges thereof, to any such city desiring to assume, and assuming, control thereof, just as, by the same section, the matter of fixing the compensation of county officers in consolidated cities and counties was confided to the city and county, to be provided for in its freeholders' charter. Such jurisdiction could not coexist in both the legislature and the city, and the provision for the assumption of such jurisdiction by the city necessarily contemplated the removal of the same from the legislature whenever the jurisdiction was assumed by the city. Any act of the legislature relative to such subject-matter would necessarily be inconsistent with a charter provision in regard to the same subject-matter. As to such matters as the constitution authorizes to be provided for in freeholders' charters, the provisions of the charter are supreme, superseding all laws inconsistent therewith (Const., Art. XI, sec. 6), and being exempt from any control by any subsequent act of the legislature.

For a city maintaining a police court under valid provisions in that behalf in its freeholders' charter, the legislature therefore no longer has the power to provide such a court. While it still has the power to provide a justice's court for any such city as part of the general state system of justices' courts, it no longer has the power to make such court also a city police

court, maintainable at the expense of the city. This would be, in effect, the same thing as providing a separate police court for the city, to be maintained at the expense of the city. Any provision of that character would be an invasion of the jurisdiction of the municipality, and inconsistent with the charter provision regarding the subject-matter of city police courts, as to which the plain object of the constitutional provision was to vest entire control in any freeholders' charter city electing to assume such control, and to free any city so doing from legislative control in that regard. As to such cities, the city justice of the peace provided by section 103 of the Code of Civil Procedure must be held to be the same in all respects as a township justice, simply a county or township officer performing no municipal functions whatever.

The legislature is not empowered to direct the appropriation of municipal funds for the payment of the salary or office expenses of one who is simply a county or township officer. Municipal funds can be appropriated under our system only for municipal purposes. (*Conlin* v. *Board of Supervisors*, 114 Cal. 404, [46 Pac. 279].) The only ground upon which the decisions heretofore cited upholding the provision for the payment of salaries and office expenses of city justices by municipalities can be sustained is that such justices, under the law then in force, in addition to being justices of the peace with the same jurisdiction as township justices, were also city police judges, performing municipal functions. (See *People* v. *Sands*, 102 Cal. 12, [36 Pac. 404]; *People* v. *Cobb*, 133 Cal. 74, [65 Pac. 325].) As we have seen, such is no longer the situation in a city having a police court established under the valid provision therefor in its freeholders' charter.

We are therefore of the opinion that the provision of section 103 of the Code of Civil Procedure, requiring a city of the fourth class to furnish the city justice of the peace with a suitable office in which to hold his court, cannot now be held applicable to the city of Fresno.

The application for a peremptory writ of mandate is denied.

McFarland, J., Henshaw, J., and Lorigan, J., concurred.

SHAW, J., concurring.—I concur in the opinion of Justice Angellotti. I wish to say, however, that I do not understand

that opinion to hold that when a freeholders' charter has created a police court, and vested in it jurisdiction over offenses against city ordinances and suits to collect city license taxes, or any other jurisdiction that could be vested in such police court, such provisions of the charter would have the effect of preventing the legislature from vesting the same jurisdiction in a justice's court created by general laws under the provisions of article VI of the constitution, or that such charter provisions would at all affect the jurisdiction of any such justice's court, whether theretofore or thereafter established. The proposition, as I understand it, is that when the special charter has provided a police court it is not competent for the legislature to charge upon the city the expenses of any justice's court created by general laws. Whether in any case the expenses of such justice's court created under article VI of the constitution could be imposed upon a city operating under a special charter is a question not decided and one which does not necessarily arise in this case.

Beatty, C. J., concurred.

SLOSS, J., dissenting.—I dissent, and think the writ should issue. In my opinion, neither of the amendments of 1896 to article XI of the constitution affects the rule declared in *Bishop* v. *Council*, 58 Cal. 572, and *Jenks* v. *Council*, 58 Cal. 576.