[L. A. No. 2159. In Bank.—February 29, 1908.]

## E. J. FLEMING, Petitioner, v. C. H. HANCE, City Treasurer of City of Los Angeles, Respondent.

POLICE COURT—CHARTER OF LOS ANGELES—VOID PROVISION NOT VALIDATED BY AMENDMENT TO CONSTITUTION.—Under the freeholders' charter of the city of Los Angeles, ratified by the legislature in January, 1889, there being no provision of the constitution then providing for a police court thereunder, the provision therein for a police court was void, *ab initio*, and was not revived or validated by the mere subsequent passage of the amendment to the constitution adding section 8½ of article XI, authorizing the creation of police courts by freeholders' charters.

ID.—PERMISSIVE AMENDMENT—POWER OF LEGISLATURE—EXPENSES OF JUDGES—CHARGE UPON CITY TREASURY.—The grant made in section 8½ of the constitution is merely permissive. If a freeholders' charter has, pursuant thereto, created a police court, the legislature cannot create within the city another police court maintainable at the city's expense. But where the city has not used such permission the legislature has power, under section 1 of article VI, to establish police or other "inferior courts" in any incorporated city or town, and to make the salaries and office expenses of the judges or justices thereof a charge upon the city treasury.

ID.—SALARY OF PROSECUTING ATTORNEY IN POLICE COURT—MUNICIPAL CHARGE—INVALID STATUTE.—The statute creating a police court in the city of Los Angeles, in so far as it provides that the salary of the prosecuting attorney required to attend thereupon and conduct all criminal cases therein, shall be a charge upon the city treasury, is invalid. The prosecuting attorney is no part of the court for that purpose; and in prosecuting public offenses of which it has

jurisdiction, he acts as attorney for the state, and his duties are not municipal in their nature because exercised within the city. The burden for such prosecutions is to be borne by state or county under the general law provided for in section 5 of article XI of the constitution, and cannot be made a charge upon the city.

ID.—VIOLATIONS OF CHARTER AND ORDINANCES—FUNCTION OF CITY ATTORNEY—"MUNICIPAL AFFAIRS"—CONTROL OF STATUTE.—As respects prosecutions for violations of the city charter and city ordinances, the regulation thereof by the city is a "municipal affair," within section 6 of article XI of the constitution; and where the city charter regulates that matter, and imposes the duty upon the city attorney to prosecute all such violations, the charter must control a general statute imposing such duties upon the district attorney, and such statute is ineffective.

ID.—PROSECUTORS AS DEPUTIES OF CITY ATTORNEY—SALARIES NOT A CITY CHARGE.—If the prosecuting attorney and his assistants, when acting at request of the city attorney, act as his deputies, that does not authorize them to enforce a claim against the city, where there is nothing in the charter or in any city ordinance allowing such deputies to receive salaries payable out of the city treasury.

APPLICATION for a Writ of Mandate to the Treasurer of the City of Los Angeles.

The facts are stated in the opinion of the court.

Hartley Shaw, E. J. Fleming, and Joseph Ford, *Amicus Curiæ,* for Petitioner.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, and Emmet H. Wilson, Chief Deputy District Attorney, for Respondent.

SLOSS, J.—The petitioner applied to the district court of appeal for a writ of mandate directing the treasurer of the city of Los Angeles to pay the petitioner's demand for salary as prosecuting attorney of the police court of said city. The court of appeal, after a hearing following the issuance of an alternative writ, granted a peremptory writ, whereupon the matter was by this court ordered to be transferred here for hearing and determination.

No issue of fact is raised by the respondent, the only question being whether the facts alleged by the petitioner entitle him to the relief sought.

The legislature passed, in 1901, an act creating, in cities of the first and one-half class (to which the city of Los Angeles belongs) a police court, with jurisdiction over all misdemeanors committed in the city, as well as all proceedings for violation of any city ordinance and actions for the collection of licenses required by city ordinances. (Stats. 1901, p. 95.) Section 7 of the act provided for the appointment by the city attorney of a prosecuting attorney and an assistant prosecuting attorney of said police court, each to receive a salary payable out of the treasury of the city. It is made the duty of these attorneys to attend the sessions of the police court, and conduct on behalf of the people all prosecutions for public offenses. In 1907 this section was amended, the changes consisting in increasing the number of prosecuting attorneys from two to four, increasing their salaries, and giving the power of appointment to the district attorney of the county instead of the city attorney. The designation of the duties of the prosecuting attorneys was also changed in a manner to be mentioned hereafter. (Stats. 1907, p. 850.)

The petitioner was, pursuant to the provisions of this amendment, appointed by the district attorney of Los Angeles County as prosecuting attorney of the police court of the city, and performed services as such. It is conceded that he is entitled to receive the salary which he seeks by this proceeding to collect, if the statute making such salary payable out of the city treasury is not in conflict with the constitution.

Pursuant to the provisions of section 8 of article XI, of the constitution, the city of Los Angeles framed and adopted a freeholders' charter, which was ratified by the legislature in January, 1889. (Stats. 1889, p. 456.) This charter made provision for the establishment of a police court (Stats. 1889, art. X, p. 486), but inasmuch as section 8½ of article XI of the constitution, authorizing the creation of police courts by freeholders' charters, had not then been adopted, this provision was held to be inoperative. (*People* v. *Toal,* 85 Cal. 333, [24 Pac. 603].) And the fact that the constitution was subsequently amended by the addition of section 8½ did not operate to revive or validate the charter provision which was void from its inception. (*Ex parte Sparks,* 120 Cal. 395, [52 Pac. 715].)

The grant contained in section 8½ is permissive merely. Where a freeholders' charter has, pursuant to the authorization of that section, created a police court, the power of the legislature to create, within the city, another police court, maintainable at the expense of the city, is, as is held in *Graham* v. *Mayor etc. of Fresno*, 151 Cal. 465, [91 Pac. 147], at an end. But where, as is the case here, the city has not taken advantage of the permission extended by section 8½ to include in its charter a valid provision for the organization of a police court, the legislature still has, under section 1 of article VI, of the constitution, power to create police or other "inferior courts" in any incorporated city or town. In cities which have not assumed control of the subject-matter of such courts, the scope of legislative control remains, notwithstanding the adoption of section 8½, as broad as it was before. Nor is the legislative power as to such cities limited by the constitutional amendment of 1896 to section 6 of article XI, exempting charter cities from legislative interference in "municipal affairs." The theory of the Graham case is that where a city, pursuant to section 8½, does provide in its charter for a police court, the subject-matter of such provision becomes a municipal affair. But it has never been held, and there is no reason for holding, that the mere adoption of section 8½ makes the creation and organization of police courts a municipal affair as to a city governed by a freeholders' charter, where such charter has not dealt with the subject of police courts. In the absence of charter provision, the legislature retains the power originally vested in it with reference to inferior courts throughout the state.

It is thoroughly settled by the decisions of this court that the legislature had the power, prior to the constitutional amendments in question, not only to establish police, or other inferior courts, in municipalities, but to provide for the payment of the salaries and office rent of the judges or justices of such courts out of the city treasury. (*Jenks* v. *Council*, 58 Cal. 576; *Bishop* v. *Council*, 58 Cal. 572; *Coggins* v. *City of Sacramento*, 59 Cal. 599.) It would seem to follow, from the views above expressed, that in cities governed by charters which have made no provision for police courts (or other inferior courts exercising similar functions) the legislature may still, notwithstanding the adoption of section 8½ and

the amendment of section 6 of article XI of the constitution, provide that the city must pay the salaries of police judges or city justices created by general law.

It might be difficult if it were a new question, to reconcile the imposition upon the city of the burden of maintaining a "part of the judicial system of the state" (*People* v. *Cobb,* 133 Cal. 74, [65 Pac. 325]), with the well-established principle that, under our system, municipal funds can be appropriated only for municipal purposes. (*Conlin* v. *Board of Supervisors,* 114 Cal. 404, [46 Pac. 279]; *Graham* v. *Fresno,* 151 Cal. 465, [91 Pac. 147].) It is said in the majority opinion in *Graham* v. *Fresno,* that "the only ground upon which the decisions heretofore cited upholding the provision for the payment of salaries and office expenses of city justices by municipalities can be sustained is that such justices, under the law then in force, in addition to being justices of the peace with the same jurisdiction as township justices, were also police judges performing municipal functions." Whatever view may be taken regarding these decisions, we feel that they express the settled doctrine of this court, and that the power of the legislature to charge upon the city treasury the expense resulting from the establishment of police or other inferior courts (except in cities which have provided by charter for a police court) is no longer open to question.

If the legislature has, under section 1 of article VI of the constitution, power to establish this court, and to make its cost a charge upon the city treasury, is the prosecuting attorney a part of that court, the burden of maintaining which may, as we have seen, be imposed upon the city? If he is, his salary may, under the rule just stated, be made payable out of the city treasury. On the other hand, if he is not a part of the court, the question arises whether the prosecution of criminal causes in the police court is so far a duty of the municipality as to justify the legislature in imposing its cost upon the city.

We think it cannot be said that the prosecuting attorney is in any sense material to this inquiry, a part of the court. No doubt the presence of attorneys to aid the court is a usual if not an indispensable condition to the disposition of judicial business. Attorneys are frequently said to be officers of the court, in the sense that they have the privilege of presenting

the causes of their clients before the court, and are subject
to its control in the performance of their duties. (*Cohen* v.
*Wright,* 22 Cal. 315.) To this extent, all attorneys practicing
before a court are its officers, but they are not, merely by
reason of being licensed to practice in the courts, public
officers. (*Cohen* v. *Wright,* 22 Cal. 315.) In criminal cases,
the attorney representing the defendant is as much an officer
of the court as is the attorney conducting the prosecution.
Each represents a party to a controversy to be determined
by the court. In the determination of this controversy the
court is impartial; it is not concerned in the success of either
party. The prosecuting attorney is, it is true, a public officer,
but the public nature of his employment results from the fact
that he represents the sovereign power of the people of the
state, by whose authority and in whose name all prosecutions
must be conducted. (Const., art VI, sec. 20.) It is his rela-
tion to his client, not to the court, that makes him a public
officer. He does not perform a function of the court to any
greater extent than his adversary does. In *Von Schmidt* v.
*Widber,* 99 Cal. 511, [34 Pac. 109], a court is defined as "a
tribunal presided over by one or more judges, for the exercise
of such judicial power as has been conferred upon it by law."
The attorneys who appear and represent parties in litigation
are not a part of such tribunal, and the mere fact that the
cost of maintaining the tribunal is a proper municipal charge
does not authorize the legislature to impose upon the city the
obligation of paying such attorneys.

It remains to be considered whether, without regarding the
prosecuting attorney as a constituent part of the police court,
the duties imposed upon him are so far municipal in their
nature that their cost may be made a charge upon the munici-
pal treasury.

By the provisions of section 7 of the act under consider-
ation (as amended in 1907), it is made the duty of "said
prosecuting attorney and said assistant prosecuting attorneys
to attend the sessions of said police court and conduct on
behalf of the people, all prosecutions of public offenses, both
misdemeanors and felonies, of which said court has jurisdic-
tion; except criminal cases arising upon violation of the
provisions of the city charter or ordinances, which shall be
prosecuted by said prosecuting attorney and assistants when

requested by the city attorney of said city, who may deputize said prosecutors for said purpose." Here are two classes of cases which it is, or may become, the duty of the prosecuting attorneys to conduct on behalf of the people: 1. Those involving a violation of the state law or a county ordinance; 2. Those involving a violation of the city law (charter or ordinance). The prosecution of the first class of offenses cannot be said to be any part of the duty of the municipality. The offenses are created by general state law or county ordinance, and are punishable under such law or ordinance whether committed within or without the limits of a municipality. The burden of so prosecuting is to be assumed by the state or the counties into which the state is, for governmental purposes, subdivided, and it has, in fact, always been so assumed in this state. The state has provided a general system of inferior courts, operating throughout every portion of each county, and having jurisdiction over offenses of this class. (Code Civ. Proc., secs. 103, 115.) The constitution (art. XI, sec. 5) requires the legislature to provide, by general and uniform laws, for the election or appointment, in the several counties, of district attorneys and to prescribe their duties. By general law it is made the duty of the several district attorneys to "conduct, on behalf of the people, all prosecutions for public offenses," in their respective counties. (Pol. Code, sec 4256; County Government Act, sec. 132, Stats. 1897, p. 488.) The duties thus uniformly imposed upon county officers do not become municipal in character merely because they are to be exercised within the limits of a city. The prosecution of offenses against the state law or a county ordinance not being, then, a municipal duty, the legislature cannot impose the cost of performing this function upon the city. "We are not aware," said this court, in *Conlin* v. *Supervisors*, "that it has been held, . . . that the legislature has power to appropriate the funds of a municipality to the discharge of an obligation against the entire state, or to direct the payment of such funds for any other purpose than pertains to the municipality itself." (See, also, *Sinton* v. *Ashbury*, 41 Cal. 525; *Hoagland* v. *Sacramento*, 52 Cal. 142; *Graham* v. *Fresno*, 151 Cal. 465, [91 Pac. 147].)

The qualified duty of prosecuting for violation of the charter or city ordinances, imposed upon the prosecuting

attorney by the act in question, presents a different question. It may well be said that prosecutions of this character, i. e., for offenses which are punishable solely by reason of the organic act or the legislative action of the city itself, may properly be regarded as included within the functions of the city, and so to be paid for by it. But the city has, in its charter, assumed and provided for this duty. By section 49 of the Los Angeles charter (Stats. 1889, p. 472), it is made the ''duty of the city attorney to prosecute in behalf of the people all criminal cases arising upon violations of the provisions of this charter and city ordinances.'' If the prosecution of such offenses is a part of the duty of the city; in other words, if it is a ''municipal affair,'' this provision of the charter must control as against an act of the legislature, by reason of the constitutional amendment exempting charters from legislative control in municipal affairs. (Const., art. XI, sec. 6.) The two provisions, that of the charter and that of the statute, are necessarily inconsistent and cannot both be operative. If the city attorney is to prosecute *all* cases of this character, none can remain which are to be conducted by the prosecuting attorneys. It is suggested that the prosecutors, when acting at the request of the city attorney, become his deputies, and therefore act for him. But the charter certainly does not contemplate that any officer shall have power to appoint assistants or deputies who shall receive salaries out of the city funds, unless provision for such appointments and salaries has been made either by the charter itself or by ordinance. (Secs. 16, 66.)

It follows that as no municipal function is to be performed by the prosecuting attorneys appointed under this act their salaries cannot be made a charge on the city treasury, and that the act, in so far as it attempts to so direct the payment of such salaries, is inoperative and void. This conclusion is in no way affected by the fact that the fines imposed by the police court are, under section 6 of the act establishing the court (Stats. 1901, p. 96.) paid into the city treasury. The legislature was not bound to turn this source of revenue over to the city; but its doing so did not authorize it to compel the city to pay expenses not properly chargeable to it. The salaries in question are not payable out of the fines collected, nor is the obligation to pay them made contingent upon the

presence in the treasury of enough money, derived from fines, to pay them. It is, therefore, immaterial, that in the past year the amount of fines collected may have exceeded the total of all salaries payable under the act.

The views expressed make it unnecessary to consider further points urged in opposition to the granting of the relief here sought.

The writ is denied and the proceeding is dismissed.

Angellotti, J., Lorigan, J., Henshaw, J., McFarland, J., and Beatty, C. J., concurred.

Mr. Justice Shaw, deeming himself disqualified, does not participate in the foregoing.