## STATE Ex Rel. OWENS *v.* DOXEY, Town Clerk

No. 3046

January 5, 1934.                                     28 P. (2d) 122.

*Milton B. Badt,* for Relator:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Julian Thruston,* Deputy Attorneys - General, for Respondent:

## OPINION

By the Court, SANDERS, C. J.:

This is an original proceeding in mandamus to compel the respondent, L. T. Doxey, as clerk of the town of Carlin in Elko County, Nevada, to forthwith proceed with the publication of a certain notice calling for bids for the purchase of $100,000 of bonds of said town for the establishment and construction of municipal waterworks and sewer system in conformity to the terms and conditions contained in ordinance No. 15, as enacted and approved by the board of commissioners of said town.

The matter came on for hearing upon the issues joined on the petition of the relator, W. C. Owens, a citizen, resident, and taxpayer of said town, and the answer thereto of the respondent, L. T. Doxey, as clerk of said town. Upon the presentation of the case it was stipulated that, when the court had reached its decision, its order might be entered and its opinion be filed at a later date. On November 24, 1933, the court, being advised of its decision, caused to be made and entered an order granting and ordering a peremptory writ of

mandamus to be issued in accordance with the prayer of the relator's petition. Whereupon the case was assigned to me for opinion, which follows:

The town of Carlin in Elko County, Nevada, was created, organized, and now operates under a commission form of government, as provided by statute entitled "An Act to provide for the commission form of government for cities and towns." Stats. 1915, p. 294, c. 192, N. C. L. sec. 1248 et seq. Section 1 of the act (N. C. L. sec. 1248) provides as follows: "SECTION 1. Any city or town in the State of Nevada may adopt the commission form of government and frame its own charter therefor."

Section 7 of the act (N. C. L. sec. 1254) reads as follows: "SEC. 7. Any city or town adopting a charter under the provisions of this act shall have all of the powers which are now or may hereafter be conferred upon incorporated cities and towns by the laws of the state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not."

Section 8 of the act (N. C. L. sec. 1255) provides for amendments to the charter by referendum election.

We are in the dark as to the charter framed and adopted by the town of Carlin under said act, but the ordinance under review, No. 15, is attached to and made a part of the relator's petition for the writ. It appears that the board of commissioners of said town, in the enactment and the adoption of ordinance No. 15, availed itself of the powers conferred by a general law of the state enacted in 1907, which provides for the incorporation of cities and towns and repealing all acts and parts of acts in conflict. Stats. 1907, p. 241, c. 125, N. C. L. section 1100 et seq. Section 1 of the act (N. C. L. sec. 1100) states as follows: "SECTION 1. The right of home rule and self-government is hereby granted to the people of any city or town incorporated under the provision of this act."

Section 28 of the act (N. C. L. sec. 1128) confers upon

the city council of such cities and towns eighty-five enumerated powers. Subdivision 5 of section 28 provides, inter alia, as follows: "5. * * * The council shall have the power to acquire or establish any public utility only in the manner herein provided. The council shall enact an ordinance which shall set forth fully and in detail the public utility proposed to be acquired or established; the estimated cost thereof as shown by the report, approved by the council and mayor, of an engineer or body theretofore appointed by the council for that purpose; the proposed bonded indebtedness to be incurred therefor, the terms, amount, rate of interest and time within which redeemable and on what fund. Such ordinance shall be published in full at least once a week for four successive weeks in some newspaper of general circulation, published in the city. At the first regular meeting of the council, or any adjournment thereof, after the completion of said publication, the council may proceed to enact an ordinance for such purpose which shall conform in all respects to the terms and conditions of the previously published ordinance, unless a petition shall be presented to it, signed by not less than fifteen per cent of the qualified electors of said city, as shown by the last preceding registration list, and representing not less than ten per cent of the taxable property of said city as shown by the last preceding tax list or assessment roll, praying for a special election in said city upon the question of whether or not the proposed ordinance shall be passed. Thereupon, no such proposed ordinance shall be enacted or be valid or effective for any purpose whatsoever, unless at a special election called and held for the purpose, a majority of the votes cast are for the ordinance."

It appears from the petition herein that, in conformity to the provisions of section 28, as quoted, the board of commissioners of the town of Carlin, after the completion of the publication of ordinance No. 15, and no petition having been presented to it praying for a special election upon the question of whether or not the proposed ordinance No. 15, as published, should be passed,

did, on October 10, 1933, enact and adopt said ordinance which in all respects conforms to the terms and conditions thereof, as previously published. Section 7 of the ordinance authorizes and directs the clerk of said town of Carlin to publish the notice incorporated therein calling for bids for the purchase of $100,000 of bonds for the construction of waterworks and a sewer system, upon the terms and conditions specified in the ordinance and the notice. The notice conforms to the provisions contained in Stats. 1927, p. 194, c. 110, N. C. L. sec. 6085 et seq.

The respondent informed the board that he refused to comply with its order and direction to publish said notice of bids for the purchase of the proposed bonds, principally for the reason that the proposal for the issuance and sale of said bonds was not submitted at a general or special election called for that purpose to the electors of the town of Carlin, as required by an act of the legislature passed and approved at the last session thereof. Stats. 1933, p. 116, c. 95.

Afterward the relator herein made application for a writ of mandamus to be issued by this court to compel the respondent to proceed forthwith with the publication of the notice of bids for the purchase of the bonds. It appears from the petition that the respondent assigned a number of reasons or grounds for his refusal to comply with the board's order and direction, which are set out in the petition.

This opinion will be confined to what is considered by the court to be the only debatable issue in the case, namely, whether, under the constitution and the charter provisions of the town of Carlin, the act of 1933 is binding and controlling upon the town of Carlin with reference to the calling of a general or special election, as provided in the act of 1933. Section 2 of the act provides as follows: "SEC. 2. Whenever the State of Nevada, or any municipality therein, proposes to issue bonds, or provide for loans, in any amount within the limit of indebtedness authorized by the constitution, the proposal for such bond issue or loan shall be

submitted at a general or special election, called for that purpose, to the electors of the state or the municipality involved who are not real property owners or the spouses of real property owners, and also to the electors thereof who are the owners of real property or the spouses of real estate property owners, as shown by the assessment roll of some one or more of the counties in the state, or the spouses of such real property owners in the manner hereinafter set forth."

Section 3 provides that two sets of ballots and ballot boxes shall be used and placed at each polling place, the boxes to be designated "A" and "B," and one set of ballots be printed on white paper and the other set on colored paper. Section 4 of the act provides that the votes of taxpayers and nontaxpayers be segregated, and that separate and distinct records be made of the votes cast. Section 5 of the act provides as follows: "SEC. 5. This act shall become effective immediately upon its passage and approval."

It will be noted that the act contains no repealing clause, that no mention is made of the charter provisions of municipalities incorporated under the general law of 1907 or the act of 1927, which deals exclusively with the subject "Municipal Bonds," and repeals all acts and parts of acts in conflict. It will also be noted that the act is silent as to procedure for calling elections and issuance and sale of bonds, if voted.

It will be noted that subdivision 5 of section 28 of the act of 1907, as hereinabove quoted, lays down a comprehensive scheme, perfect and full in all details, for the acquisition or establishment of any public utility and for a bonded indebtedness therefor, reserving to the taxpayers of any town or city the right to petition for a special election to determine whether the proposed bonds should issue. There is no provision in the act of 1933 that it shall apply to towns having home rule charters or commission form governments. The question to arise, therefore, is whether or not the act of 1933, as framed and adopted, overrides or supersedes the charter provisions of the town of Carlin and ordinance No. 15.

**1-3.** Section 8 of article 8 of the constitution of Nevada as amended in 1924 reads as follows: "SEC. 8. The legislature shall provide for the organization of cities and towns by general laws and shall restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, except for procuring supplies of water; provided, however, that the legislature may, by general laws, in the manner and to the extent therein provided, permit and authorize the electors of any city or town to frame, adopt and amend a charter for its own government, or to amend any existing charter of such city or town."

It will be noted that the legislature may by general law, in the manner and to the extent therein provided, permit and authorize the electors of any city or town to frame and adopt a charter for its own government. This had been done by the legislature of Nevada in the passage and adoption of the act of 1907. The town of Carlin having availed itself of the privilege extended by section 28 of said act, the further question arises: "May the legislature consistently, by a mere declaration, provide that any proposal for the issuance and sale of bonds by any city or town shall by a general or special election called for that purpose, be submitted to a vote of the electors involved?" It is our duty to construe the act of 1933 and the charter of the town of Carlin, in so far as they deal with the same subject matter, together. It is held that as to matters, exclusive control of which is given to a municipality by the constitution, the municipality is exempt from any control by any subsequent act of the legislature. 43 C. J. sec. 294, p. 275. The text cites in support the case of Graham v. Fresno, 151 Cal. 465, 91 P. 147, 149, from which I quote as follows: "The effect of subdivision 1 of section 8½ of article 11 was to make the matter of such police courts purely a municipal affair as to any freeholders' charter city which subsequently made appropriate provision in its charter for such court. It confided the subject - matter of such courts, and the election and compensation of the judges thereof, to any such city

desiring to assume, and assuming, control thereof, just as, by the same section, the matter of fixing the compensation of county officers in consolidated cities and counties was confided to the city and county to be provided for in its freeholders' charter. Such jurisdiction could not coexist in both the Legislature and the city, and the provision for the assumption of such jurisdiction by the city necessarily contemplated the removal of the same from the Legislature, whenever the jurisdiction was assumed by the city. Any act of the Legislature relative to such subject-matter would necessarily be inconsistent with a charter provision in regard to the same subject-matter. As to such matters as the Constitution authorizes to be provided for in freeholders' charters, the provisions of the charter are supreme, superseding all laws inconsistent therewith (section 6, art. 11, Const.), and being exempt from any control by any subsequent act of the Legislature."

In principle the effect of this holding is that, whenever the constitution authorizes municipalities to legislate upon a particular subject matter under the provisions of a freeholder charter, such legislation is exclusive and supersedes all acts of the legislature relative to the same subject matter and inconsistent therewith. Simpson v. Payne, 79 Cal. App. 780, 251 P. 324, citing Graham v. Fresno, supra.

4. Since the constitution of Nevada authorizes the legislature to confer upon home rule towns and cities power to legislate upon particular subjects, it necessarily follows that the act of 1933, as framed, does not supersede the charter provisions of the town of Carlin dealing with the same subject matter. We therefore conclude that the reason assigned by the respondent, that it would be unlawful for him to comply with the order and direction of the board of commissioners to proceed with the publication of notice of bids for the purchase of said bonds, cannot be sustained.

The court has given cautious examination and careful thought to each and all of the remaining objections assigned by the respondent as reasons for his refusal

to comply with the order and direction of the board of commissioners to publish notice of bids for the purchase of the $100,000 of waterworks and sewer bonds upon the terms and conditions as authorized by ordinance No. 15, and finds each and all of them to be untenable.

It is therefore adjudged and ordered that the peremptory writ of mandamus issued out of this court on November 24, 1933, be, and the same is hereby, confirmed, and that the same be and remain in full force and effect.