[S. F. No. 1198. Department One.—July 28, 1898.]

# JOHN A. QUIGG, Respondent, v. DAVID EVANS, as Mayor etc., et al., Appellants.

HARBOR MASTER FOR PORT OF EUREKA—CREATION OF OFFICE.—The office of harbor master for the port of Eureka was created and its fees regulated by the act of April 4, 1870, to create a board of harbor commissioners for that port, which act was substantially carried into the Political Code, section 2570 of which makes the town marshal of Eureka the harbor master of the port. Under the act of 1874, incorporating the city of Eureka, the city marshal was made harbor master of the port.

ID.—NATURE OF OFFICE—MARSHAL, AS HARBOR MASTER.—An office is the right to exercise a public function or employment, and to take the fees and emoluments belonging to it. The duties of the office of harbor master concerned the public, and the compensation came from the public treasury; and in the performance of the duties prescribed to the marshal, as harbor master, he was acting as harbor master, and not performing added duties as marshal.

ID.—NEW CITY CHARTER—ABOLITION OF OFFICE OF MARSHAL—CODE PROVISIONS UNREPEALED.—The approval of the new freeholder's charter of the city of Eureka, February 8, 1895, which suspended the charter of 1874, and abolished the office of city marshal, without making any provision therein for any officer of the city to perform the duties of harbor master, did not abolish the latter office, nor operate to repeal sections 2570 and 2572 of the Political Code, so far as they relate to the office of harbor master, but only operated to repeal them so far as they relate to the duties of the marshal.

ID.—VACANCY—APPOINTMENT BY GOVERNOR.—Under the new charter of the city of Eureka, no person being designated by law to perform the duties of the office of harbor master, that office became vacant; and there being no mode specially provided by the constitution or the law for filling such vacancy, the governor was authorized to fill it under the provisions of section 8 of article V of the constitution.

ID.—COMPENSATION OF HARBOR MASTER—LIABILITY OF CITY—SERVICES OUTSIDE CITY LIMITS.—The harbor master of the port of Eureka may claim compensation from the city of Eureka for services performed in Humboldt bay outside of the city limits, in removing sunken logs so as to clear the channel of the bay from obstructions, for the benefit of the port, and in aid of its commerce, although incidentally benefiting other places.

ID.—JURISDICTION OF HARBOR COMMISSIONERS—EMPLOYMENT OF HARBOR MASTER.—The board of harbor commissioners of the port of Eureka has jurisdiction beyond the city limits to protect navigation in Humboldt bay, and to remove obstructions to the regular ebb and flow of the tide; and whatever the law authorizes the board to do or to cause to be done, it may cause to be done by the employment of

its executive officer, the harbor master, whose duty it is to enforce and carry into effect such rules and regulations as the board of harbor commissioners may adopt.

ID.—POWER TO FIX COMPENSATION—MANDAMUS TO CITY COUNCIL.—The board of harbor commissioners of the port of Eureka has jurisdiction under section 2572 of the Political Code, which was not superseded by the new city charter, to fix the compensation of the harbor master, and it cannot rest with the city council to reject a claim for services of the harbor master, allowed by that board; but the amount allowed by it must be paid monthly by the city, and it is the duty of the city council to order a warrant drawn in favor of the harbor master for the amount allowed and certified by the harbor commissioners; and *mandamus* will issue to compel the city council so to do.

APPEAL from a judgment of the Superior Court of Humboldt County.  G. W. Hunter, Judge.

The facts are stated in the opinion.

A. J. Monroe, for Appellant.

Mahan & Mahan, and L. F. Puter, for Respondent.

CHIPMAN, C.—*Mandamus.*  The facts are agreed.  Plaintiff was duly appointed and commissioned harbor master of the port of Eureka, Humboldt county, June 2, 1897, by the governor, and he duly qualified June 9th and entered upon the performance of his duties as such harbor master, and is still performing said duties; on June 12th the board of harbor commissioners duly made and entered its order fixing the fees of said harbor master at two dollars and fifty cents for each day's work as such; he performed certain services between June 9, 1897, and August 1, 1897, amounting to one hundred and twelve dollars and fifty cents, for which said board of harbor commissioners issued certificates approving and allowing the same; plaintiff duly presented said certificates to defendants, and demanded that they issue or cause to be issued warrants on the city treasurer of the city of Eureka for said amount, which was refused, and defendant rejected said claims.  The city of Eureka has a population of eight thousand people, and is the principal point on Humboldt bay, and carries on commerce with all of the places mentioned in defendants' answer (certain ports and towns on the waters of the

bay and its estuaries), which are outside the limits of the city of Eureka; the services performed by plaintiff at all these various points was a benefit to the city of Eureka and assisted in stimulating its commerce; certain of the outside places are shipping points, from which commerce is carried on with Eureka, San Francisco, and other points; Humboldt bay is fourteen miles long and has a tidal area of twenty-eight square miles, thirty-five miles of navigable channels, and an available waterfront of about fifty miles; Eureka is situated about three miles northeast of the ocean entrance thereto. The agreed statement of facts then locates many shipping points on the bay and its waters, and their relation to Eureka, and gives the report of plaintiff describing his services as harbor master in detail. The court gave judgment for plaintiff, directing the writ to issue commanding defendants to issue warrants as prayed for. Defendants appeal, the agreed statement of facts to be treated as if presented by a bill of exceptions.

Appellants claim: 1. That there is not now and never was such an office as harbor master for Eureka; 2. And if there was it was abolished by the present charter of the city; 3. That the legislature could not compel the city to pay for services outside the city limits; 4. That whatever liability there may be is limited to the harbor master's fees for "enforcing and carrying into effect the rules and regulations" adopted by the board of harbor commissioners; 5. That if the claim is illegal in part the council could reject it as a whole; and 6. That this is not a case for *mandamus*.

1. The first and important question is, Has the law created the office of harbor master for the port of Eureka, and, if so, did it exist when plaintiff was appointed? The act of April 4, 1870 (Stats. 1869-70, p. 744) is an act entitled "An act to create a board of harbor commissioners for the port of Eureka, on Humboldt bay, and to prescribe their powers and duties." The first section creates a board of three commissioners whose duties are prescribed by the act. The chairman of the board of supervisors of Humboldt county and the president of the board of trustees of the town of Eureka are declared to be *ex-officio* members of the board of harbor commissioners, the third member to be appointed by the governor. Section 2 prescribes the duties

of the board.  Section 3 gives it power to impose certain penal-
ties.  Section 4 provides as follows: "The town marshal of said
town shall be the harbor master of the port of Eureka, whose
duty it shall be to enforce and carry into effect such rules and
regulations as the board of harbor commissioners shall, from
time to time, adopt and publish, and to report to said board
any and all violations thereof."  Section 5 prescribes the com-
pensation of the members of the board.  Section 6 provides as
follows: "The fees of the harbor master shall be as prescribed by
the board of commissioners hereby created, and shall be paid
monthly, by the board of trustees of the town of Eureka, upon
the certificate of said board of commissioners, except such fees
as may be provided to be otherwise paid by said board of com-
missioners."  This act was substantially carried into the Politi-
cal Code as originally enacted, by sections 2567 to 2572 inclu-
sive.  Sections 2570 and 2572 correspond with sections 4 and
6 of the act of 1870.  Section 2570 now reads: "The town mar-
shal of Eureka is the harbor master of the port of Eureka.  He
must enforce and carry into effect," etc.  The office corres-
ponding to that of harbor master, created by the acts relating
to the harbors of San Francisco and San Diego, is called chief
wharfinger.  The city of Eureka was incorporated by act of Feb-
ruary 10, 1874.  It repealed the act of 1859 by which the town
of Eureka was incorporated, and created certain offices, among
them a city marshal.  (Stats. 1873-74, p. 91.)  Section 9 pro-
vided as follows: "The city marshal, in addition to the duties
prescribed by section 4389 of the Political Code, shall be har-
bor master of the port of Eureka.  The mayor, in addition to
his other powers, shall be *ex-officio* harbor commissioner for the
port of Eureka."  February 8, 1895 (Stats. 1895, p. 355), the
legislature approved the "freeholders' charter" of the city of
Eureka which superseded the charter of 1874.  It repealed the
office of city marshal.  No provision was made therein for any
officer of the city to perform the duties of harbor master.  The
board was left without an executive officer until June 9, 1897,
when plaintiff qualified under his appointment by the governor.
This appointment was made under the provisions of section 8,
article V, of the constitution, which reads: "When any office
from any cause becomes vacant, and no mode is provided by the

constitution and law for filling such vacancy, the governor shall have the power to fill such vacancy, by granting a commission, which shall expire at the end of the next session of the legislature or at the next election by the people." It seems to us that when the board of harbor commissioners was created by the act of 1870, and when its provisions were re-enacted in the Political Code, the legislature contemplated that there should be connected with that board an executive officer to be known as harbor master. The language of the law does not distinctly so declare, but we think it clearly inferable that such was the intent of the law. How could it be said that "the town marshal shall be the harbor master of the port of Eureka, whose duty shall be to enforce," etc., unless there was to be such office? If the legislature had intended merely to add certain duties relating to this board to those already imposed upon the marshal relating to the board of town trustees, there would have been no necessity for mentioning the name of the office of harbor master. Instead of saying "the town marshal of said town shall be the harbor master, whose duty it shall be to enforce," etc., it would have said, "the town marshal of said town shall enforce," etc. Section 6 of the act provides that "the fees of the harbor master shall be as prescribed by the board," etc. Here it seems to us is a clear recognition of the office. This is further shown by the act of 1874, section 9 of which provides that the city marshal shall, in addition to his other duties, be harbor master. In the performance of the duties prescribed the marshal was acting as harbor master and not performing added duties as marshal. These duties concerned the public, and the compensation came from the public treasury. "An office is the right to exercise a public function or employment and to take the fees and emoluments belonging to it." (3 Kent's Commentaries, 454.) The duties devolved upon the harbor master at the port of Eureka were much less complicated than those required of the chief wharfinger at the port of San Francisco or the port of San Diego, and might at the time well be placed in the hands of the town marshal; but it is the nature of the duties to be performed, and not their extent, which makes a public office and a public officer. When the freeholders' charter was adopted in 1895 the office of city marshal

was abolished, and no provision was made for any officer of the city government to perform the duties of harbor master. But we do not think that sections 2570 and 2572 of the Political Code were repealed, except so far as they relate to the duties of the marshal; the office of harbor master remained. No person being designated by law to perform the duties, the office of harbor master became vacant. There being no mode specially provided by law or by the constitution for filling such vacancy, the governor was authorized to do so under the provision of the constitution already quoted.

2. Appellants contend that the legislature could not compel the city to pay claims for services rendered outside the city limits. The account rendered by plaintiff and the agreed facts show that a part of his services were performed at points on Humboldt bay outside the city limits, but it was agreed that this work "was a benefit to the city of Eureka and served the necessary purpose of assisting and stimulating the commerce of said city." It was also agreed that the city of Eureka "is the principal shipping point on Humboldt bay and carries on commerce with all the places" where plaintiff performed any service. It was also agreed that the harbor commissioners made an order "fixing the fees of the harbor master at two dollars and fifty cents per day for each day's work," and that the claims of plaintiff presented and allowed were for fees for services as harbor master. It is said that section 12, article XI, of the new constitution is violated by imposing this burden of caring for the whole bay upon the city of Eureka. The article referred to prohibits the legislature from imposing taxes upon municipalities for municipal purposes, "but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." But section 2072 of the Political Code was passed before the new constitution, and it is conceded by appellants that "section 3 of the charter of 1873-74 and of the freeholders' charter of 1895 of Eureka, makes the present city liable for obligations that pertain to the preceding city and town." Section 1, article XXII, of the new constitution would seem to justify this concession. It is claimed, however, that the tax was unauthorized by the old constitution, and we are cited to section 4, article XI, of that constitution re-

quiring that "the legislature shall establish a system of town governments which shall be as nearly uniform as practicable throughout the state," and to section 13 of the same article requiring taxation "to be equal and uniform throughout the state"; and also to *People v. Lynch,* 51 Cal. 15; 21 Am. Rep. 677; *Hoagland v. Sacramento,* 52 Cal. 142. We are unable to discover any infraction of these provisions in the legislation now challenged. In the early act the mayor of the town and the chairman of the board of supervisors were *ex-officio* members of the board of harbor commissioners, and in the acts of 1873-74 and 1895 the mayor was a member, and the other two were required to be appointed from residents of the city, so that the tax was to be imposed by the local authorities and not by the legislature. We do not think the provisions of the old constitution relied upon were designed to place any restraint upon the legislature in creating boards of harbor commissioners and in prescribing their powers and duties. The nature of these duties, and the infrequency of occasion to create boards to discharge them forbade anything like a system of legislation which could be uniform throughout the state, or even among the few ports of entry in the state. Each port of entry and harbor called for legislation adapted to its peculiar condition and location and surroundings.

While it is admitted that some of the services were actually performed outside the city, for example, removing sunken logs so as to clear the channel from obstructions, all parties agreed that it was for the benefit of the port of Eureka and aided her commerce, although incidentally benefiting other points. Section 2568 of the Political Code provides that: "The board of harbor commissioners of the port of Eureka are authorized and empowered to make such rules and regulations, and take such action, as may be necessary or proper for the protection of navigation in Humboldt bay, or in any slough or creek emptying into the same so far as the tide ebbs and flows." Section 2569 confers even broader powers and clearly gives the board jurisdiction beyond the city limits of Eureka. What the board may do, or where it may go, in the exercise of its powers, it may cause to be done by its executive officer, the harbor·master, for it is made his duty "to enforce and carry into effect such

rules and regulations as the board of harbor commissioners may
from time to time adopt and publish." We see no reason why
this officer should not be employed by the board to do for it
what the law authorizes the board itself to do or cause to be
done, to wit: "Prevent and remove obstructions to the regular
ebb and flow of the tides," etc. (Pol. Code, sec. 2569.)

3. It is finally urged that this is not a case for *mandamus*.
Section 2572 of the Political Code provides that "the fees of the
harbor master are prescribed by the board of commissioners, and
paid monthly by the board of trustees of the town of Eureka,
upon the certificate of the board of commissioners." Appellants
contend that the claim of the harbor master should be presented
to and passed upon by council of the city of Eureka as any other
claim, with the discretion in the council to approve or reject it,
and that if rejected the charter, section 179, provides a remedy;
that the charter "supersedes all laws inconsistent with such char-
ter" (Const., art. XI, sec. 8), and that section 2572, *supra*, is in-
consistent with the provisions of the charter and is superseded
by it. If the harbor commissioners have the power to fix the
fees, then it cannot rest with the council to reject. If the coun-
cil is charged with the discretion to approve or reject the claim
of the harbor master after the harbor commissioners have fixed
his compensation, it would be within the power of the coun-
cil to defeat the law by which the harbor commissoners act. We
do not think that it was the intention of the charter to super-
sede, nor has it the effect of superseding, the sections of the
Political Code relating to the harbor commissioners and the
harbor master. Section 53 of the new charter recognizes the
existence of the harbor commissioners, and provides that the
mayor shall be *"ex-officio* harbor commissioner of the port of
Eureka." Under the law, the compensation of the harbor mas-
ter is fixed by the commissioners at two dollars and fifty cents
per day, and the law says (Pol. Code, sec. 2572) this must be
"paid monthly by the board of trustees of the town of Eureka,
upon the certificate of the board of commissioners." No ques-
tion is made of the former liability of the municipality. If it
be said that there is no longer a "town of Eureka" and there-
fore the section of the code does not apply to the "city of
Eureka," section 3 of the new charter answers: "The said city

of Eureka . . . . shall be subject to all the obligations, debts, liabilities, dues, and duties of the existing municipality." We think the law as it now exists specially enjoins upon the city the duty of paying the harbor master's fees as fixed by the harbor commissioners, and that upon their certificate being presented it became the duty of the council to order a warrant drawn in favor of plaintiff for the amount certified by the harbor commissioners. Section 1085 of the Code of Civil Procedure provides that the writ of mandate may issue in such case.

The judgment should be affirmed.

Belcher, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.        Harrison, J., Garoutte, J., Van Fleet, J.