[Civ. No. 2305.    Second Appellate District.—May 31, 1917.]

W. H. BOSS, Petitioner, v. WALTER A. LEWIS, as County Auditor, etc., et al., Respondents.

VITAL STATISTICS ACT—FEES OF LOCAL REGISTRARS—PAYMENT OUT OF COUNTY TREASURY—CONSTITUTIONAL LAW.—The provisions of the Vital Statistics Act which impose upon the county treasury the burden of payment of a local registrar's fees are not violative of article XI, section 13, of the constitution, as an attempt on the part of the legislature to delegate to a private individual the power to appropriate and interfere with county money, nor are they violative of the provisions of article XI, section 12, taken with article XIII, section 14, of the constitution.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Second Appellate District to compel the issuance and payment of a warrant for fees of a local registrar under the Vital Statistics Act.

The facts are stated in the opinion of the court.

Kemper B. Campbell, for Petitioner.

A. J. Hill, County Counsel, and Roy V. Reppy, Assistant City Counsel, for Respondents.

CONREY, P. J.—The petitioner is the city clerk of the city of Huntington Park, a city of the sixth class. As such city clerk he is local registrar for the primary registration district comprised within the city of Huntington Park, as provided by chapter 378, found at page 575 et seq. of the Statutes of 1915. In this proceeding he seeks to compel the county auditor of the county of Los Angeles to issue his warrant payable out of the county treasury for certain fees to which the petitioner claims to be entitled under the provisions of that act, and to compel the county treasurer to pay the same.

For convenience, we will designate the statute as the Vital Statistics Act.

The state board of health is an official body authorized by article XX, section 14, of the state constitution, and established in accordance with certain provisions of the Political Code. (Pol. Code, secs. 2978–2984.) The code sections authorize the state board of health to appoint a secretary, whose duties are duly defined and who is a civil executive officer. In the Vital Statistics Act it is provided that the secretary of the state board of health is *ex-officio* state registrar of vital statistics, and that he "shall have full supervision and control over the central bureau of vital statistics which is hereby authorized to be established by said state board of health." It is directed that the state board of health shall appoint a competent vital statistician and a clerk, and "shall provide for such clerical and other assistants as may be necessary for the purposes of this act." It is provided that the state registrar shall have charge of the registration of births, marriages, and deaths; and that the state board of health shall be charged with the uniform and thorough enforcement

of the law throughout the state, and shall promulgate any additional rules or regulations.

Certain portions of the Vital Statistics Act read as follows: "Sec. 3. For the purposes of this act the state shall be divided into registration districts as follows: each city and county, city and incorporated town and each county exclusive of the portion included within cities and incorporated towns shall constitute a primary registration district." "Sec. 4. . . . the clerk of each city and incorporated town shall be the local registrar in and for such primary registration district and shall perform all such duties of local registrar as hereinafter provided; . . . " "Sec. 20. Each local registrar shall be paid the sum of twenty-five cents for each birth certificate and each death certificate properly and completely made out and registered with him, and correctly recorded and promptly returned by him to the state registrar, as required by this act. . . . All amounts payable to a local registrar under the provisions of this section shall be paid by the treasurer of the county in which the registration district is located, upon certification by the state registrar. . . . " The duty of county auditors to issue warrants in favor of persons entitled thereto in payment of claims and demands chargeable against the county is defined by section 4091 of the Political Code.

It is conceded that the collection of vital statistics is a state function and that the local registrars are state officers, and that the county charter of Los Angeles County contains no provisions affecting the state's general powers in the particulars at issue in this proceeding. The proper disposition of this case requires nothing more than that we pass upon the specific propositions urged by counsel for respondents, who contend that those provisions of the Vital Statistics Act which impose upon the county treasury the burden of payment of a local registrar's fees are unconstitutional and void. Those propositions are stated as follows: (1) That the provisions in question are violative of article XI, section 13, of the constitution, and are an attempt on the part of the legislature to delegate to a private individual the power to appropriate and interfere with county money. (2) That the legislature has not the right to require a county to meet any portion of the burden of government within its confines with which the county has no connection whatever. (3) That the legisla-

tion in question is forbidden by section 12 of article XI, taken together with section 14 of article XIII of the state constitution.

Article XI, section 13, of the constitution reads as follows: "The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever, except that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state." We do not find in the sections of the Vital Statistics Act to which reference is made any violation of the foregoing section of the constitution. There is no attempted delegation of power, as that term should be understood. The act itself is complete and prescribes duties which must be performed. No attempt is made to vest in the state board of health or in the state registrar any discretion as to whether or not there shall be local registration districts or local registrars. The state board of health is an official body created to enforce a general and permanent law for the entire state. The state registrar and local registrars are administrative officers under its supervision. None of them come within the description of "special commission, private corporation, company, association, or individual." They are not vested with discretionary powers under which they might control, appropriate, supervise, or in any way interfere with county money. The control and the appropriation are the direct effect of the statute incident to the performance of the duties imposed by the statute. When the state registrar, after receiving his report from the local registrar, makes to the treasurers of the several counties his certificate of the number of births and deaths properly registered, with the names of the local registrars and the amounts due to each of them as fees for the performance of their duties at the rates fixed by the state, he is not exercising a power to appropriate county money, but is merely performing an administrative or clerical act which is necessary to carry into effect the provisions of the statute.

In our opinion, the requirement that the fees of local registrars shall be paid out of the county treasury is not in conflict with any limitation upon the power of the legislature to impose upon counties the burden of expense incurred in the performance of a state governmental function. The particular reason urged by respondents for their contention is that the county has no connection whatever with the performance of those functions. The position of counsel seems to be that, although the object of county government is to carry out state purposes and perform state functions locally, yet that the payment of compensation to public officers for the performance of general public duties imposed upon them by the state and performed by such officers within a county may not be imposed as a burden upon the county treasury unless those officers are in fact county officers acting as part of the local governmental unit. Counsel would distinguish between the rule applicable in the case at bar and the rule covering the compensation of district attorneys, assessors, sheriffs, and other county officers performing state functions locally and whose compensation and expenses it is admitted that a county may be required to pay, even when the expense thus incurred relates solely to the performance of state functions within the county. But we think that the distinction to which counsel refer is one of form and not of substance. A county is a mere political agency of the state, and holds its property on behalf of the state for governmental purposes. (*Reclamation District* v. *Superior Court,* 171 Cal. 672, at pages 679 and 680, [154 Pac. 845].) It is created by the state, acting independently of the local population; therein it is significantly different from a city. In the case cited many instances are given illustrating legislative control over public property intrusted to the governmental management of counties and other subordinate districts of the state. Since the state has those powers, we perceive no sufficient reason for refusing to hold that under appropriate conditions and in the exercise of its police power, as in the case at bar, the legislature may direct the performance of prescribed state functions through local officers within the several counties of the state, and award to them compensation payable out of the public funds in the county treasury.

Section 12 of article XI of the state constitution reads as follows: ''The legislature shall have no power to impose taxes

upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.'' Section 14 of article XIII of the same constitution provides a method of raising money for state purposes. Certain sources of revenue are separately defined upon which taxes shall be entirely and exclusively for state purposes. The taxes levied upon the corporations and other associations there described and upon their property are to be in lieu of all other taxes and licenses, state, county, and municipal, upon the described property, except in the instances provided in that section. Subdivision (e) of the section states that ''out of the revenues from the taxes provided for in this section, together with all other state revenues, there shall be first set apart the moneys to be applied by the state to the support of the public school system and the state university. In the event that the above-named revenues are at any time deemed insufficient to meet the annual expenditures of the state, including the above-named expenditures for educational purposes, there may be levied, in the manner to be provided by law, a tax, for state purposes, on all the property in the state including the classes of property enumerated in this section, sufficient to meet the deficiency.''

Quoting to us these provisions of the constitution, respondents argue that their effect is to disable the legislature from meeting any of the annual expenditures of the state from other sources than the taxes provided for upon public service corporations, etc., and a deficiency tax to be levied in case those taxes are insufficient. It is claimed that if the legislature may call upon the counties to assist the state in meeting the expenses of state government out of moneys raised by local taxation, the exercise of that power may result in destroying the integrity of the system of taxation established by the constitution. But we think that the fearful consequence does not follow. Section 14 does declare that the taxes levied upon certain classes of property shall be entirely and exclusively for state purposes. It does not say that the legislature may not for state purposes impose any taxes upon other classes of property than those so enumerated. It is directly contem-

plated that there may be other state revenues than those derived from the taxes provided for in section 14. And it is well known that the state is now deriving revenues from licenses and other taxes not collected from the special sources described in section 14.

Referring again to section 12 of article XI, the contention of respondents is based upon the clause which says that the legislature may by general laws vest in counties, etc., the power to assess and collect taxes for county purposes. We are asked to draw the inference that the legislature is thereby prohibited from vesting in county authorities power to assess or collect taxes for other than county purposes. If such prohibition is to be implied, it comes only by inference and indirection; and being in derogation of the general legislative power of the state, the proposed interpretation will not be favored if the language is capable of any other meaning. The principal purpose of section 12 was to take from the legislature the power to impose taxes upon the several local public corporations for their local purposes. But it was necessary that the power to impose taxes for local purposes should be vested somewhere; therefore, in order to remove all doubt upon the question, it was provided that the authority should be vested in the local corporate authorities. Section 12 contains nothing whatever which purports to establish a rule controlling the power of the legislature concerning the levying and collecting of taxes for state purposes; and we find no reasonable ground for asserting that the subject of taxation for state purposes is included within the scope of that section.

In their discussion of article XI, section 12, respondents refer us to five decisions. These are: *People* v. *Parks*, 58 Cal. 624; *Quigg* v. *Evans*, 121 Cal. 546, [53 Pac. 1093]; *Conlin* v. *Board of Supervisors*, 114 Cal. 404, [33 L. R. A. 752, 46 Pac. 279]; *Graham* v. *Mayor etc. of Fresno*, 151 Cal. 465, [91 Pac. 147]; *Fleming* v. *Hance*, 153 Cal. 162, [94 Pac. 620]. In *People* v. *Parks*, one of the judges (at page 644 of the decision) made the statement quoted by counsel: "A local board cannot be authorized to levy local taxes and assessments for a public purpose. Such a power could not be conferred upon a municipal corporation (Const., art. XI, § 12), neither can it be conferred upon a *quasi*-municipal corporation." In that case, the statement was mere dictum and is not authority.

As stated in *Miller* v. *Dunn,* 72 Cal. 462, 470, [1 Am. St. Rep. 67, 14 Pac. 27], the statute under consideration in *People* v. *Parks* was declared unconstitutional solely on the ground that the legislature could not delegate to executive officers such legislative powers as it had attempted to confer by that act. In *Quigg* v. *Evans,* 121 Cal. 546, [53 Pac. 1093], section 12 of article XI of the constitution was held not to apply to the case, since the legislative act there questioned was passed before the adoption of the constitution of 1879 and the particular statute was continued in force. The point there urged by appellants was that the legislature could not compel the city to pay claims for services rendered outside the city limits. At all events, the case would not be applicable here; it dealt with a strictly municipal corporation. In the present case we are discussing the relations between state and county governments under a general statute wherein compensation is provided for an officer performing duties imposed by a general state law, the duties being performed wholly within the county. The cases of *Conlin* v. *Board of Supervisors,* 114 Cal. 404, [33 L. R. A. 752, 46 Pac. 279], *Graham* v. *Mayor etc. of Fresno,* 151 Cal. 465, [91 Pac. 147] , and *Fleming* v. *Hance,* 153 Cal. 162, [94 Pac. 620] , are likewise distinguishable from the present action, and in none of them was section 12 of article XI mentioned or discussed. We are willing to say here, as was held in the Conlin case, that the legislature has not power to appropriate the funds of a city to the discharge of an obligation against the entire state, or for other than the purposes of such municipality; and although the legislative control over affairs of the county is broader and in some respects more complete than over the affairs of cities, we readily concede that the legislature would not have authority to give money out of the county treasury to a private person who had no other legal claim therefor, as the legislature attempted to do in directing that Conlin be paid his private and invalid claim out of the treasury of the city of San Francisco. But we think that in the exercise of its power of providing for the general welfare of the state, the legislature may by a general law impose duties, all having the same character, upon local officers within the several counties of the state, and provide for them a compensation in proportion to their duties and

payable out of the treasuries of the several counties in which those officers are located.

Let the peremptory writ issue.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1917.