[Civ. No. 2705.  Third Appellate District.—February 28, 1924.]

## THE CITY OF SACRAMENTO (a Municipal Corporation), Respondent, v. G. C. SIMMONS, Appellant.

[1] MUNICIPAL CORPORATIONS—OBLIGATION TO PAY MONEY TO CITY TREASURER—STATUTE OF LIMITATIONS.—The obligation of a city official to pay to the city treasurer certain moneys collected by him is an obligation created by law; and said official has to and including the last day of the expiration of his term of office within which to turn over the funds so collected; and, under section 338 of the Code of Civil Procedure, an action upon such liability is not barred until the lapse of three years.

[2] ID.—PUBLIC MONEYS—TERM DEFINED.—The "public moneys" of the city of Sacramento, within the meaning of a provision in its charter that "all public moneys collected by any officer or employee of the city shall be paid into the city treasury," means money or funds belonging to the city, moneys which are owing and

payable to the city in its corporate capacity, such as taxes, assessments, license fees, if any, moneys derived from sales of property, wharfage charges and such like, and it does not include fees for services performed in behalf of any agency outside of and distinct from any of the municipal functions of the city.

[3] ID—VITAL STATISTICS ACT—LOCAL STATE REGISTRARS—JURISDICTION—COMPENSATION.—The act of the legislature, approved May 19, 1915, entitled an act to provide a central bureau for the preservation of records of marriages, births, and deaths, etc., simply makes different officers in different localities local state registrars of vital statistics and, to the extent that they are discharging such duties, they are acting as state officers, performing state functions under the exclusive jurisdiction of the state registrar of vital statistics, and the compensation provided for this service, although performed by a municipal officer, is in nowise connected with any function exercised as a municipal officer.

[4] ID. — USE OF LOCAL OFFICERS BY STATE — COMPENSATION. — The state has the power to utilize different officers in different localities and make them state officers for this purpose and direct fees to be paid for such services by the respective counties.

[5] ID.—ILLEGAL PAYMENTS BY COUNTY TO CITY OFFICIAL—TITLE OF CITY TO MONEYS.—The mere fact that a city commissioner of the city of Sacramento was not legally authorized to receive compensation from the county of Sacramento for services to the state as local registrar of vital statistics did not give to the city of Sacramento any title to the moneys paid by the county for such services.

[6] ID.—PAYMENTS TO LOCAL REGISTRAR OF VITAL STATISTICS—DUTY TO TURN OVER TO CITY.—Moneys received by the city commissioner of the city of Sacramento, who has been assigned to the department of public health and safety, from the county of Sacramento as compensation for discharging the duties of local registrar of vital statistics for the state, are not required to be turned over to the city treasurer of said city.

(1) 25 Cyc., p. 1053; 28 Cyc., p. 471.   (2) 28 Cyc., p. 471.   (3) 36 Cyc., p. 853.   (4) 36 Cyc., p. 853.   (5) 28 Cyc., p. 471.   (6) 28 Cyc., p. 471 (1926 Anno.).

APPEAL from a judgment of the Superior Court of Sacramento County.   Charles O. Busick, Judge.   Reversed.

The facts are stated in the opinion of the court.

Elliott & Atkinson for Appellant.

Robert L. Shinn for Respondent.

PLUMMER, J.—This is an appeal by the defendant from a judgment entered against him in the superior court of the county of Sacramento in favor of the plaintiff in the sum of $3,194.25. It appears from the pleadings and stipulation of facts in this action that the defendant was, from the first day of July, 1915, to the thirtieth day of August, 1920, a duly elected, qualified, and acting commissioner of the city of Sacramento, and during that period of time was the head of the department of public health and safety of said city; that while acting as the head of such department there was paid to the defendant for acting as local registrar of vital statistics the sum of $1,659.75 and that between the sixteenth day of December, 1918, and the twelfth day of May, 1920, there was paid to said defendant by W. J. Hanna the sum of $1,534.50, collected from the county treasurer of the county of Sacramento for acting as local registrar of vital statistics during the said period of time; that none of said money was paid over by the defendant to the city treasurer of the city of Sacramento; that no part of the said money was used by the defendant for personal or individual purposes, but was all expended by him for purposes which said defendant, as commissioner, considered as coming within the purview of his department. These expenditures, however, were unauthorized by any vote of the commissioners of the city of Sacramento and do not appear to have been ratified by them although such expenditures were from time to time regularly reported by the defendant as such commissioner.

The action by the plaintiff is prosecuted upon the theory that the moneys collected by the defendant while acting as registrar of vital statistics were and are public moneys belonging to the city of Sacramento and that as such the defendant was not entitled thereto and that his expenditures of the sum were not in any manner authorized by law. On the part of the defendant it is insisted that the fees collected by the defendant from the county of Sacramento were and are not public moneys; that such moneys belonged to the defendant individually; that the expenditures made by him were for purposes beneficial to the city of Sacramento, and that if such moneys were in fact public moneys, the city is now estopped from bringing action for their recovery.

As this action was begun within one year after the expiration of the defendant's term of office, and as the defendant would have until the expiration of his term of office to pay over such moneys, if they belonged to the city of Sacramento, we think the statute of limitations has not run in this case.

[1] An obligation to pay money to the city treasurer is an obligation created by law, and section 338 of the Code of Civil Procedure provides that an action upon a liability created by statute is not barred until the lapse of three years. Under the rule laid down in *People* v. *Van Ness*, 76 Cal. 121 [18 Pac. 139], the defendant would have up to and including the last day of the expiration of his term of office within which to turn over the funds collected by him, if such funds constituted moneys belonging to the city of Sacramento.

However beneficial the expenditures of the money herein referred to made by defendant were, we do not find anything in the city charter authorizing such expenditures by the commissioner of public health and safety of his own volition. Omitting the smaller items, $803 appears to have been expended for the upkeep of automobiles used in the transportation of employees of the health department; $1,057 expended through the medium of the local department of the American Red Cross; $835 for milk furnished sick and undernourished children, and $582 for ice to preserve food for the poor of the city. It remains to determine whether the moneys collected and received by the defendant, as aforesaid, should have been turned over by him to the treasurer of the city of Sacramento. This involves a study of the city charter.

The city charter, as it existed during the period of time referred to, provided for the election of five city commissioners. Five departments were established, the third being the department of public health and safety, to which the defendant was assigned. Section 11 of the city charter provided for the appointment of certain officers who should be appointed by and hold office at the pleasure of the city commissioner, under whose supervision the department came. Under this section the defendant was empowered to appoint a health officer.

Section 13 of the charter reads: "No salaried officer of the city, elective or appointive, except as in this charter provided, shall hold any salaried office, position or employment in the National, State or County government."

Section 14 specifies that: "No officer, clerk, assistant or employee shall receive any commission, money or thing of value, or derive any profit, benefit or advantage, direct or indirect, from or by reason of any dealings with or services for the city by himself or others, except his lawful compensation as such officer, clerk, assistant or employee."

Section 15 of the charter fixes the salary of each commissioner as follows: "The salary of each commissioner shall be thirty-six hundred dollars ($3,600) per annum. . . . All salaries shall be payable in equal monthly installments, and shall be in full compensation for all duties and services performed by all officers and employees of the city."

Section 96 of the charter reads as follows: "All public moneys collected by any officer or employee of the city shall be paid into the city treasury, without any deduction on account of any claim for fees, commissions or any other cause or pretense; and the compensation of any officer, employee or other person so collecting money, shall be paid by demands on the treasury, duly audited as other demands are audited and paid."

Section 110 reads: "There shall be a department of public health and sanitation under the administrative control of the commissioner of public health and safety. Said commissioner and department shall have supervision of all matters pertaining to the sanitary conditions of the city and the health of its inhabitants."

Section 111 is to this effect: "The principal officer and executive of said department shall be a health officer who shall be appointed by the commissioner."

Section 114 requires: "The health officer shall see to it that the laws of the state and ordinances of the city relative to public health and sanitation and all rules, regulations, orders and requirements of the health department are promptly enforced."

Section 116 of the charter specifies that the secretary of the health department shall keep a record of the transactions of the department, including all vital records, or death or cemetery records, belonging to the city. Also, a complete

record of all births and deaths within the city, and interments in both public and private cemeteries.

Section 4 of the act of the legislature, approved May 19, 1915 (Stats. 1915, p. 575), entitled an act to provide a central bureau for the preservation of records of marriage, births, and deaths and to provide for the registration of all births and deaths, the establishment of registration districts and to create the offices of state and local registrars of vital statistics, provided that, in cities having a freeholders' charter, the health officer shall act as local registrar and perform all the duties thereof.

Section 20 fixes the fees of local registrars, and further specifies that the state registrar shall quarterly certify to the treasurers of the several counties the number of births and deaths properly registered with the names of the local registrars and the amounts due to each at the rate fixed therein.

In pursuance of this act of the legislature the defendant (so far as the record shows not having been appointed a health officer) from the date the said act went into effect down to and including a portion of the year 1918 acted as local registrar of vital statistics, and thereafter and until the expiration of the defendant's term of office one W. J. Hanna acted as such local registrar.

We do not see that section 13 of the charter, to which our attention has been called, has any application. It is simply prohibitive in that it is designed to prevent a city officer from holding any office or employment under the national, state, or county government.

Section 14 of the charter, to which our attention has been directed, is confined in its application to dealings with or services for the city and does not relate to or have any bearing upon acts or services performed by any officer, clerk, assistant, or employee outside of and not connected with dealings or services for the city.

Section 15 in its concluding sentence, which we have heretofore quoted, makes the salaries paid full compensation for duties and services performed by all officers and employees of the city. It does not extend to or include services which are not for the city or within the purview, intent, meaning or jurisdiction of the municipal functions of the city of Sacramento.

.

Much of the argument in this case is centered around section 96 of the charter hereinbefore set forth. That section directs that all public moneys collected by any officer or employee of the city shall be paid into the city treasury, without any deduction on account of any claim for fees, commissions or any other cause or pretense, etc. The question naturally occurs, what is meant by the term public moneys collected by any officer or employee of the city. In 32 Cyc. 1248, the following definition appears of public moneys: ''The meaning of the term in any particular case is governed by the context and the intent with which it is employed. As used in the statutes of the United States, money of the government, received from the public revenues or entrusted to its officers charged with the duty of receiving, keeping, or disbursing the same wherever it may be.''

In *Myers* v. *Kiowa County Commrs.*, 60 Kan. 189 [56 Pac. 11], it is held that the term ''public moneys'' used in relation to counties, means the same as county funds. [2] In other words, the public moneys of the city of Sacramento, as used in this section, we think, means money or funds belonging to the city of Sacramento, moneys which are owing and payable to the city in its corporate capacity, such as taxes, assessments, license fees, if any, moneys derived from sales of property, wharfage charges, and such like. It does not include fees for services performed in behalf of an agency outside of and distinct from any of the municipal functions of the city of Sacramento. The person designated by the enactment of the legislature to perform the services of collecting vital statistics and transmitting the same to the state registrar is acting under the authority thereof and is not in anywise accountable to the municipality of Sacramento for any failure whatever to perform such duties. It is provided by said act that the state registrar shall certify to the county treasurers of the respective counties the number of births, deaths, etc., and the amount of money to be paid to the local registrar. We find nothing in the charter which requires the local registrar to collect this compensation. It is no part of the duties of either the health officer of the city of Sacramento or of the commissioner of public health as the same are set forth in the city charter. [3] The act in question simply makes different officers in

different localities local state registrars of vital statistics and, to the extent that they are discharging such duties, they are acting as state officers. They are state officers performing state functions and are under the exclusive jurisdiction of the state registrar of vital statistics. The compensation provided for this service is in nowise connected with any function exercised as a municipal officer. The charter provision, we think, has reference to the performance of duties incident to the municipal office in question and does not extend to matters which are entirely separate and distinct therefrom. **[4]** The power of the state to utilize different officers in different localities and make them state officers for this purpose and direct fees to be paid for such services by the respective counties, is upheld in the case of *Ross* v. *Lewis,* 33 Cal. App. 792 [166 Pac. 843]. We find nothing in the city charter which brings this case within the decision of the supreme court in the case of *County of Humboldt* v. *Stern,* 136 Cal. 63 [68 Pac. 324]; *County of Kern* v. *Fay,* 131 Cal. 547 [63 Pac. 857]; *County of Alameda* v. *Cook,* 32 Cal. App. 165 [162 Pac. 405]. In the case of *County of Humboldt* v. *Stern, supra,* the decision of the court is explicit and particular in limiting the compensation claimed to acts performed for the county. It quotes the act of the legislature applicable as follows: "The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or *ex-officio* officers, their deputies and assistants, unless in this act otherwise provided." (Stats. 1897, p. 572, sec. 215.) And then says: "This provision is a legislative declaration that the officers shall not receive any compensation from the county other than the salaries therein named for any services they may render it, either in the line of their official duty or otherwise." The court was not considering acts or services rendered to the state of California or to any other municipality, power, or person outside of the county of Humboldt, but was only determining that the compensation provided for covered all acts that should be performed for the county of Humboldt and the county of Humboldt alone.

In the case of *County of Kern* v. *Fay, supra,* the court had to do with that provision of the law which allowed the

sum of $10 to be taxed as costs for fees in suits instituted by the district attorney to foreclose school land certificates. The section relating to salaries of the county of Kern contains the following provisions: "The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or *ex-officio* officers, their deputies, and assistants, unless in this act otherwise provided." (Stats. 1893, p. 507, sec. 216.) And then further on, in defining the duties of the district attorney, contained the following language: "On the first Monday of each month, file with the auditor an account, verified by his oath, of all moneys received by him in his official capacity during the preceding month, and at the same time pay them over to the county treasurer."

In bringing the foreclosure suits for the county of Kern, Fay was acting in his official capacity as district attorney of the county of Kern and under the above provisions he necessarily was required to pay all the fees to the county treasurer collected by him while acting in such capacity.

In *Dodge* v. *San Francisco,* 135 Cal. 512 [67 Pac. 973], we find such officer acting under a provision of the law which reads as follows: "The salaries provided in this charter shall be in full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county within twenty-four hours after receipt of the same." (Stats. 1899, p. 364, sec. 34.) The question before the court was as to the right of Dodge to retain fees for collecting poll taxes. The court held that the collection of poll taxes was a part of his official duties as assessor of the city and county of San Francisco and that under the charter he was required to pay all such fees and moneys into the city treasury.

In the case of *County of Alameda* v. *Cook, supra,* which had to do with the fees allowed by act of Congress to county clerks in naturalization proceedings, in holding that the county clerk was not entitled to retain such fees, the court called attention to the fact that Cook was acting as *ex-officio* clerk of the superior court; that section 4232 of the Political Code read that his salary, which was fixed, should be in full

compensation for all services of every kind and description rendered by him either as county or as *ex-officio* clerk of the superior court, and also to section 4290 of the same code, which required the clerk to collect for the use of his county and pay into the county treasury on the first Monday of each month the fees "now or hereafter allowed by law in all cases except where such fees or percentage thereof were allowed to him or were made a charge againt the county." The fees allowed by the act of Congress in naturalization proceedings (U. S. Comp. Stats., sec. 4372) were held to be fees "allowed by law" and as such the county clerk was required to pay them into the county treasury on the first Monday of each and every month after their collection. The charter of the city of Sacramento contains no such provisions as appeared in the law controlling the decisions of the cases above cited and the cases which follow the rule set forth therein.

We do not see that section 110, in providing that there shall be a department of public health and sanitation under the administration and control of the department of public health and safety has any bearing upon the issues now being considered. The compilation of figures by the state of California showing the number of deaths has nothing to do with public health, the healing of the sick or preserving the lives of the living, nor has it to do with sanitary activity. The remainder of the section shows what is meant by the first sentence of section 110 of the charter to which our attention has been called, to wit, the matter of sewage disposal, defective drainage, abatement of nuisances, the correct preparation, manufacture, and sale of articles intended for human consumption, quarantine requirements, and the prevention of the spread of infectious or communicable diseases. It has nothing to do with the compilation of figures which meet either a public need or satisfy a morbid curiosity.

Section 114 of the charter is simply along the same lines in requiring the health officer of the city to see that the laws and ordinances relative to public health and sanitation and the rules of the health department are promptly enforced.

Section 111, as far as it has any bearing upon the issues before us, simply provides that the health officer shall be appointed by the commissioner of public health and safety.

Section 116 of the charter has only to do with municipal duties to be performed by the secretary of the board of health. That the city of Sacramento provides for keeping its own record of vital statistics has nothing to do with the activities conducted along somewhat similar lines by the state of California. The concluding clause of that section sets forth the intent and purpose of the charter in confining the work of the secretary to such other duties "relative to the health and sanitation of the city as may be required of him."

This *résumé* of the charter shows that matters of public health and sanitation within the city of Sacramento which are matters of general concern to all the people therein were very carefully safeguarded and provided for, and further that there is nothing in the charter as heretofore stated which requires any officer of the city to do or perform any act such as the state seeks to have done under the act of the legislature of May 19, 1915. Everything provided for in that act is a state function wholly dissimilar and unconnected with any act required of any officer by the city charter of the city of Sacramento. The health officer of the city of Sacramento is one position and that of local registrar of vital statistics of the state of California is another. The fact that one person performs the functions of both officers does not change the situation in any particular or make the two one. [5] That the defendant may not have been legally authorized to act as public health officer (not having been appointed to that position) or to collect money from the county of Sacramento for his services to the state does not give to the city of Sacramento any title to the money so collected nor does the fact that there has been no reason shown why W. J. Hanna, while acting as local registrar of vital statistics of the state of California, turned over to the defendant the fees collected by him, give to the city of Sacramento any title to such moneys. In other words, if the moneys involved in this action were not properly collected or legally payable to the persons who collected the same, that is the concern of the county of Sacramento and not of the city.

[6] Being of the opinion that there was nothing in the city charter during the period involved in these proceedings

or in the general laws of the state which required the defendant to turn over to the city treasurer of the city of Sacramento compensation collected by him from the county of Sacramento through the agency of the state of California for discharging the duties of local registrar of vital statistics for the state of California, we conclude that the judgment of the trial court herein should be and the same is hereby reversed.

Hart, J., and Finch, P. J., concurred.