## CITY OF LOS ANGELES v. GURDANE et al. No. 6684.

Circuit Court of Appeals, Ninth Circuit. May 23, 1932.

Erwin P. Werner, City Atty., Frederick Von Schrader, Asst. City Atty., and Joseph T. Watson, Deputy City Atty., all of Los Angeles, Cal., for appellant.

Hewitt, McCormick & Crump, of Los Angeles, Cal. (Leslie R. Hewitt and Roy W. Colegate, both of Los Angeles, Cal., of counsel), for appellees.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This was an action brought by the appellees to enforce collection of a reward of $10,-000 offered by the city of Los Angeles for the arrest and conviction of the person or persons directly implicated in either the kidnapping or the murder of Marion Parker, a 12-year old school girl of Los Angeles. On December 22, 1927, the appellees apprehended William Edward Hickman near Echo, Or. Hickman later was surrendered to the state agent of California, was tried, convicted, sentenced to death, and executed.

Though a number of questions, many of them of a somewhat technical nature dealing with pleading, have been raised by the appellant, in our view of the case it is necessary only to consider the fundamental problem of municipal authority; namely, Was the City of Los Angeles, under its charter and under the Constitution of California, empowered to offer the reward embodied in Ordinance No. 59803 and relied upon by the appellees herein?

The argument of the appellees in this regard is twofold: First, that, by reference, the power to offer a reward has been specifically given to the City of Los Angeles by its charter of 1925; and, second, that, even if such express power had not been given, the city, under its "general, broad municipal powers," was authorized to offer a reward for the apprehension and conviction of a felon. We will consider the two contentions seriatim.

1. Article 3, section 32, of the charter of 1889 (see St. 1889, p. 464) as amended in 1911 (see St. 1911, p. 2069) provides in part: "It [the Council] may, by ordinance, authorize the offering of rewards for the apprehension and conviction of any person who may have committed a felony in the city, and for the recovery of lost property of the city, and provide for the payment of such rewards."

The present charter of the city of Los Angeles, adopted on January 22, 1925, contains no such provision. The appellees concede this, but insist that "the power to offer and pay a reward flows, not from the old Charter, but from the charter of 1925, where it was incorporated, not by specifically setting it forth, but by reference, and just as effectually, by including in the new Charter all of its powers under the old."

In view of this contention, it becomes necessary to examine, in the new charter, these "references" to prior provisions of law.

At the outset, it may be conceded that the references are broad and sweeping in terms. While they are too numerous to be set out here in full, we will quote those most strongly in support of the appellees' contention:

"Sec. 2. The City of Los Angeles [see St. Cal. 1925, p. 1028], in addition to any other rights and powers now held by it," etc.

"(5) To exercise any or all rights, powers, privileges and procedures now or hereafter established or authorized for municipalities, or for the City of Los Angeles, by any law of the State of California, by this charter, or by other lawful authority."

"Sec. 437. All acts of the Legislature relating to the City of Los Angeles, and all city ordinances, resolutions and other regulations, or portions thereof, in force at the date this charter takes effect and not inconsistent with this charter, shall be and remain in force after this charter takes effect until changed or repealed by the proper authority and in accordance with the provisions of this charter; and no rights vested under any former act, ordinance or regulation, when this charter takes effect, shall thereby be lost, impaired or discharged; and all actions and proceedings commenced in any court wherein the City of Los Angeles is a party, shall be continued without loss of rights or duties on the part of the city or other parties involved. * * * *"

While, as we have said, this language is indeed sweeping, we believe that the powers referred to are the ordinary and not the extraordinary powers of the municipal corporation. By "extraordinary" we mean those which do not normally inhere in a municipality under the general law, but which, in order to be authorized at all, must be specifically and unequivocally granted to the city by its charter. To this latter class, as we shall see, belongs the power to offer a reward for the arrest and conviction of a felon.

As we read these and similar provisions in the 1925 charter, they reflect the city's concern for its vested property rights and for its litigious rights or choses in action. We do not believe that the freeholders, the electors, or the Legislature intended, by such broad and general terminology, to include the provision as to rewards, which they had seen fit to omit from the new charter. It is fair to assume that a power of this nature, not generally regarded as a municipal function, would have been included in the new charter, not by a general and doubtful reference, but by the simple and obvious expedient of specific re-enactment.

Without, however, relying solely upon this assumption, we are still led to the conclusion that the city of Los Angeles has not, under its present charter, the power to offer such a reward.

Section 8 of article 11 of the Constitution of California reads in part as follows: "The legislature shall by concurrent resolution approve or reject such charter as a whole, without power of alteration or amendment; and if approved by a majority of the members elected to each house it shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith."

The foregoing is the language of the section as amended in 1922; but a careful comparison of earlier texts, from the date of the adoption of the Constitution, in 1879, discloses that substantially the same phraseology was used in the original section and in the various amendments thereto.

It seems clear, therefore, that, for the past half century at least the people of California have, through constitutional mandate, deliberately expressed their desire that the powers of a city shall be outlined in one charter and one charter alone. The consistent recurrence of the foregoing language in the various amendments to the section preclude the hypothesis of inadvertence or infelicity of phrase. To us, the conclusion is inescapable that the Constitution means what it says; namely, that a new charter shall supersede, or completely replace, the old.

There are no qualifications or reservations to this mandate; and we must needs enforce it according to its plain terms. Furthermore, the constitutional provision is grounded upon sound reason; for it is highly desirable that those who deal with a municipal corporation shall have but one instrument to which to look for the measure of the city's powers. Were it otherwise, it would be necessary not only to scrutinize the existing charter but all previous charters, in the effort to ascertain whether a power sought to be exercised by the municipality had been given to it in ancient days, by some forgotten section that had been neither re-enacted nor repealed. We think it neither wise nor politic to hold the public to so high a standard of diligence; and we believe that the framers of California's Constitution intended to declare a more reasonable rule.

"But," argue the appellees, "it is true that the old charter was superseded by the Charter of 1925, but that it was superseded does not mean that it was obliterated."

Unfortunately for the appellees' argument, however, that is precisely what "superseded" does mean.

In the First and Third Editions of Words and Phrases we find the following definitions for "supersede": "Set aside;" "annul;" "displace;" "make void, inefficacious, or useless;" "repeal." Surely, according to these definitions—which we believe square with the canons of statutory interpretation—there is not much left of the "existing" charter when a new charter is duly adopted by the Legislature. In this view we are sustained by a long and unbroken line of decisions by the Supreme Court of California.

In the early case of People ex rel. Adams v. City of Oakland, 92 Cal. 611, 28 P. 807, 809, the following language was used regarding this same constitutional provision: "As a description of the territory whose inhabitants are incorporated as a municipal corporation is an essential part of the charter, an amendment of such description of the territory of the city of Oakland by the proceedings to annex additional territory was an amendment of its charter, which was wholly superseded by the new charter framed and adopted under and in accordance with section 8 of article 11 of the constitution."

Section 8 was again interpreted by the Supreme Court of the state in Ex parte Sparks, 120 Cal. 395, 52 P. 715, 716: "The old charter is not *repealed* because it is so enacted in the new charter, or because its provisions are inconsistent with those of the new charter. The new charter does not *abrogate* the old ex proprio vigore, *but because the constitution declares that such consequence should follow.* The reason of this is sufficiently obvious. It is not the passage of an ordinary law, but the establishment of a government. The new is to take the place of the old, however dissimilar; and, although some parts of the old charter have no correspond-

ing provisions in the new, there is no presumption that anything is continued, for the new scheme is deemed complete in itself, and to provide all that is desired. That which is omitted is omitted because' not desired." (Italics our own.) See, also, Burke v. Board of Trustees, etc., 4 Cal. App. 235, 87 P. 421, 422, and Spaulding v. Desmond et al., 188 Cal. 783, 207 P. 896, 900.

The appellees cite the case of Ex parte Lemon, 143 Cal. 558, 561, 77 P. 455, 65 L. R. A. 946, as authority for their contention that, by the general and sweeping references of the new charter, quoted above, the provisions of the old charter were carried over. A brief quotation from.the Lemon Case, however, at once will demonstrate that it is not here applicable, since the reference there relied upon was to the Political Code of the state, and not to a previous charter:

"The question, then, is as to whether or not the special act under which Marysville exists, which is its legislative charter, confers upon it the power to impose a license tax for revenue purposes. That act does not specify the powers granted, except by reference to another statute, the provision being as follows, viz.:

" 'Section 1. The territory described in section two of this act, and the inhabitants therein residing, are hereby declared to be a municipal corporation, with the powers and under the provisions of title three of the Political Code of this state, to be known in law as the "City of Marysville." ' "

Furthermore, it will be noticed that the reference to the Political Code is specific, being by title; while the references relied upon by the appellees herein are, in the language of counsel, "omnibus provisions."

That the Political Code of California stands upon a footing different from that of a previous charter was further indicated by the state Supreme Court in Quigg v. Evans, etc., et al., 121 Cal. 546, 53 P. 1093, 1095, 1096: "We do not think that it was the intention of the charter to supersede, nor has it the effect of superseding, the sections of the political Code relating to the harbor commissioners and the harbor master."

On the other hand, as we have seen, it *is* the intention of the Constitution of the state that a new charter shall supersede the old.

■ 2. The appellees also rely upon the "general, broad powers of the municipality" as the city's authority for offering a reward of the kind we now have under consideration. While the question does not seem' to have

been directly decided by the Supreme Court of California, the jurisprudence of this state shows a clear tendency away from any such holding.

In 22 Cal. Jur. pp. 828, 829, § 3, we find the following language: "No doubt a private person may offer such rewards as he pleases, if public policy is not violated. But a public officer cannot bind the state or any of its subdivisions by such an offer unless authority is conferred by legislation. Various statutes authorize the giving and offering of .rewards, the most important being that which empowers the governor to offer rewards not exceeding one thousand dollars each for the apprehension of any convict who has escaped from a state prison, or of any person who has committed an offense punishable with death, or for the arrest of each person who robbed or attempted to rob any person in charge of a conveyance engaged in carrying passengers or any private conveyance within the state. The authority of the governor so conferred is limited to the apprehension of the criminals specified, and does not include services rendered in furnishing evidence to convict."

Follow other limitations of the Governor's power to offer or to pay rewards. These limitations indicate, first, that the power to offer rewards for crimes is regarded in California as primarily belonging to the state; and, second, that even officers of the state are strictly circumscribed in.the exercise of that power.

In answer to the appellees' contention that the power to offer and pay a reward has become a "municipal affair of the City of Los Angeles," we quote the following from Jackson v. Baehr, etc., 138 Cal. 266, 71 P. 167, 168: "It is sufficient, in answer to this, to say that the superior courts are state courts, and criminal cases concern the state, and are state affairs." See, also, Robert v. Police Court, etc., 148 Cal. 131, 82 P. 838, 840 (concurring opinion).

In 54 Corpus Juris, p. 780, § 11, the rule is thus stated: "In the absence of express authorization, however, it is generally held that municipal corporations are not empowered to offer rewards for the arrest or conviction of offenders against the criminal law of the state. * * * "

A similar statement is found in 19 Ruling Case Law, § 101, p. 794: "The prevention of crime and the enforcement of criminal law is a function of the state rather than of any subdivision thereof, and while the appointment of police officers is usually delegated to

municipal corporations, the officers so appointed are public officers whose duties are defined by law, and they serve the people of the whole state rather than the municipality which appointed them. To the corporation itself no duties in respect to the enforcement of the criminal laws of the state are delegated by implication. It is for this reason that it is held by the weight of authority that a municipal corporation has no implied power to offer a reward for the apprehension or conviction of persons guilty of crime, and that an action cannot be maintained against it upon such an offer."

Again, in 23 R. C. L. p. 1124, § 13, we find the following: "The authorities very generally agree, however, that municipalities have no power to offer rewards for the apprehension of offenders against the criminal laws of the state, unless a statute or charter provision confers such power, as is sometimes done, but the ordinary general welfare clause of a municipal charter does not have this effect."

Similarly, the broad and general provisions of the 1925 charter, as to the city's power "to enforce law and promote the public peace, health, safety and welfare," do not vest the municipality with authority to offer a reward for the apprehension and conviction of a felon.

Indeed, in Choice v. Dallas (Tex. Civ. App.) 210 S. W. 753, 756, cited by the appellees themselves, it is stated: "The authorities hold with comparative unanimity that as a general rule a municipal corporation may not offer rewards for the arrest and conviction of persons violating the criminal laws of the state."

The appellees also quote from two California Supreme Court decisions in the effort to sustain their contention that "The City of Los Angeles possesses the power to pass ordinances in furtherance of the general policy of the state government." Examination of one of these cases, Ex parte McClain, 134 Cal. 110, 66 P. 69, 54 L. R. A. 779, 86 Am. St. Rep. 243, discloses that it deals with the validity of an ordinance against the possession of a lottery ticket, while in Re Ah Cheung et al., 136 Cal. 678, 69 P. 492, the ordinance considered by the state Supreme Court was one prohibiting the exhibition of gambling paraphernalia and the visiting of places where there was such exhibition. In each case the ordinance was sustained on the ground that it represented a reasonable exercise of the city's police powers. But, as we have seen, the offering of a reward for the capture and conviction of a criminal is not part of a city's inherent power, according to the overwhelming weight of authority; therefore these two California cases are not in point.

Finally, the Supreme Court of California has repeatedly held that any doubt as to the powers of a municipal corporation must be resolved against the corporation. In Ex parte Daniels, 183 Cal. 636, 192 P. 442, 444, 21 A. L. R. 1172, the court said:

"While it is true that the regulation of traffic upon a public street is of special interest to the people of a municipality, it does not follow that such regulation is a municipal affair, and if there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state. The rule is that —

"'Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied.' Hyatt v. Williams, 148 Cal. 585, 587, 84 P. 41, 42, citing Von Schmidt v. Widber, 105 Cal. 157, 38 P. 682; Dillon on Mun. Corp. §§ 89, 91."

See, also, Willmon v. Powell et al., 91 Cal. App. 1, 266 P. 1029-1031.

Accordingly, since we hold that the city of Los Angeles possesses neither the express nor the implied power to offer a reward for the apprehension and conviction of a felon, the judgment of the lower court is reversed.

Judgment reversed.