[No. 13769.  In Bank. — September 10, 1890.]

## N. MILNER, APPELLANT, v. R. R. REIBENSTEIN ET AL., RESPONDENTS.

CHARTER OF STOCKTON — MUNICIPAL COURT — CITY JUSTICE OF THE PEACE — EX OFFICIO JUDGE. — Under the charter of the city of Stockton of March, 1889, framed and adopted under constitutional amendment No. 6, providing for a municipal court to be held and presided over by a city justice of the peace appointed by the mayor, the police court under the old charter and the court of the city justice of the peace were practically consolidated by adding the duties theretofore performed by the police court, to the court of the city justice, giving it a clerk and seal, and making it a court of record, which the charter declares shall not be deemed a new court, but a continuation of the courts theretofore existing; and the appointment of the city justice as judge of the municipal court gives him no new term, and no new office, but simply makes him *ex officio* judge of the new court.

ID. — SALARY OF MUNICIPAL JUDGE. — It was not intended by such charter to increase the salary of the city justice upon becoming judge of the municipal court, or to add a new salary as such judge to that which pertained to his office as city justice, but it was the evident intent of the framers of the charter to reduce the compensation of the city justice; and he cannot draw or receive an additional salary as *ex officio* judge of the municipal court. (BEATTY, C. J., dissenting.)

ID. — CONSTITUTIONAL LAW — CHANGE OF SALARY. — The compensation of the city justice of the peace, who is an officer provided for by the con-

stitution, being fixed by general law, as prescribed in section 103 of the Code of Civil Procedure, can only be changed by an amendment of that code, and not by charter provision, and can neither be increased nor diminished during the term of an incumbent, or by any special or local legislation; and the city justice designated as judge of the municipal court of Stockton, whose term of office began prior to the adoption of the city charter, can claim his full salary as city justice under the code, notwithstanding the intent of the charter to reduce his salary.

APPEAL from a judgment of the Superior Court of San Joaquin County.

The facts are stated in the opinion of the court.

*Ansel Smith, Wesley Minta,* and *Nicol & Orr,* for Appellant.

*F. T. Baldwin,* and *E. I. Jones,* for Respondents.

Fox, J. — Application to the superior court of the county of San Joaquin for a writ of mandate requiring the defendants, the mayor and clerk and comptroller of the city of Stockton, to issue a warrant upon the treasury of that city in favor of the plaintiff, who is city justice of the peace in said city, for the sum of one hundred dollars, as and for his salary as judge of the municipal court, for the month of December, 1889. Upon a hearing of the cause the court denied the writ, and entered judgment for defendants, from which plaintiff appeals.

The case is argued and presented as if it involved the question of the legal existence of the municipal court of the city of Stockton, and a reconsideration of the question passed upon in *Brooks* v. *Fischer,* 79 Cal. 173, *Ex parte Ah You,* 82 Cal. 339, and *People* v. *Toal, ante,* p. 333. In our judgment no such question is involved.

The sole question in this case is, whether or not the plaintiff, who is regularly drawing and receiving his salary of two thousand dollars per annum, as city justice of the peace, is entitled to draw and receive an additional salary of twelve hundred dollars per annum as judge of the municipal court. In 1884 the city of Stockton, then a municipal corporation under a special charter passed

prior to the adoption of the present constitution, reorganizod, as a city of the fourth class, under the "act to provide for the organization, incorporation, and government of municipal corporations," approved March 13, 1883. (Stats. 1883, pp. 223 et seq.) Of this corporation J. H. Tam was elected police judge, and the plaintiff, Milner, was elected city justice of the peace, each for the term of two years, commencing January, 1889. On the 2d of March, 1889, a charter, framed and adopted under constitutional amendment No. 6, became and ever since has been the organic law of said city. (Stats. 1889, pp. 578 et seq.)

By the terms of this charter, the police court under the old charter and the court of the city justice of the peace were practically consolidated (see secs. 104–130), under the title of "Judicial Department," to be held and presided over by a city justice, to be designated and appointed by the mayor. The city justice of the peace is an officer provided for by the constitution, and his election, term of office, and compensation are prescribed by the codes. The charter does not attempt to abolish the office or the court of the city justice, but adds the duties which theretofore in the municipality were performed by the police court, gives it, for the performance of those duties, and the administration of the judicial department of the local government, a clerk and seal, makes it a court of record, calls it " municipal court," and declares that it shall not be deemed a new court, but a continuation of the courts theretofore existing. After the organization of the municipality under the new charter, and in May, 1889, Tam resigned the office of police judge, and the municipal court was organized by the appointment of Tam as clerk, and of the city justice, plaintiff, as judge thereof. This gave the plaintiff no new term and no new office. It simply made him *ex officio* judge of the new court. No other person was eligible to act as such, as none but a city justice of the peace could be desig-

nated to act as such, except in a case in which he might
be disqualified, when any justice of the peace in the
county could be designated to act in his stead (sec.
108); and he was the only city justice of the peace. The
compensation of plaintiff as city justice of the peace was
and is prescribed by section 103 of the Code of Civil
Procedure, and he was and is in the regular receipt
thereof. Section 50 of the charter provides that the
compensation of officers and employees of the city shall
be fixed by the city council, not to exceed a certain limit
therein named. This mentions municipal judge, and
prescribes the limit at fifteen hundred dollars per an-
num. By a proviso to the section, the salaries of all the
officers of the city are fixed by the charter itself for the
first two years, and in this proviso the municipal judge
is mentioned, and his salary fixed at twelve hundred dol-
lars per annum. On the 8th of May, 1889, before the
organization of the municipal court, the city council
passed an ordinance fixing the salary of the municipal
judge at the same sum named in this proviso.

The court below, after finding the facts in the case,
found, as conclusion of law, that the plaintiff " herein is
not entitled to have or receive from the said city of
Stockton any salary as municipal judge of said city."
In this conclusion we think the court was correct. To
our minds, it was not the intention of the framers of the
charter, or of the people in adopting or the legislature
in approving it, to increase the salary of the city justice.
It was not in the power of the legislature to do it, during
his term of office (Const., art. 11, sec. 9), or by local or
special law. (Const., art. 4, sec. 25, subd. 29.) The city
justice of the peace is one of the justices of the peace of
the state, an officer provided for by the constitution. The
tenure of his office and his compensation is fixed by
general law, and is prescribed in section 103 of the Code
of Civil Procedure. If it is desired to change the meas-
ure of his compensation, it must be done by amendment

of that general law, and cannot be done by special legislation; nor has the power been delegated to the people to do it by charter provision. The language of the charter, taken as a whole, does not justify the conclusion that it was intended to create a new and independent office, to be compensated by a new and added salary. On the contrary, it seems to us that the intention of the framers of the charter was to reduce the salary of the city justice of the peace, to make it twelve hundred dollars per annum for the first two years, and then leave it to be fixed and regulated by the city council thereafter, but not to exceed fifteen hundred dollars per annum. But if such was the intention, as we think it was, it must fail of accomplishment, for that salary can only be changed by an amendment of the code. Until the code is amended, the city justice of the peace will be entitled to receive the salary of two thousand dollars per year, and will not be entitled to receive other or more by reason of any added duties that may be imposed upon his office.

Judgment affirmed.

SHARPSTEIN, J., McFARLAND, J., THORNTON, J., and WORKS, J., concurred.

PATERSON, J., concurred in the judgment.

BEATTY, C. J., dissenting.—If the decision, filed August 4th, in *People* v. *Toal, ante,* p. 333, from which I dissented, is to stand, the judgment in this case must be affirmed. For, under the doctrine there announced, all the provisions of the present charter of Stockton relating to its municipal court are null and void. But if the validity of those provisions is assumed, I cannot see how the conclusion can be avoided that the plaintiff is entitled to the compensation provided in the charter. It is not increasing his salary as city justice to pay him the salary of another office, the duties of which are cast upon him by a new appointment.

Rehearing denied.