[Civ. No. 1418.   Fourth Appellate District.—February 7, 1933.]

CLAUDE L. CHAMBERS, Petitioner, v. G. F. WATER-BURY, Auditor, etc., Respondent.

512

Charles B. De Long for Petitioner.

C. L. Byers, City Attorney, and Gilmore Tillman, Assistant City Attorney, for Respondent.

James G. Pfanstiel, Nicholas J. Martin and Shelley J. Higgins, as *Amici Curiae*.

BARNARD, P. J.—This is a petition for a writ of mandate commanding the respondent, as auditor of the city of San Diego, to audit, approve and pay a claim of petitioner for salary as police judge, presiding over the police court of said city.

Prior to January 1, 1932, the city of San Diego had no provision in its charter for a police court and for some years before that date the usual functions of such a court were exercised by and through a city justice's court, established and existing under and by virtue of the general laws

of the state. Under this arrangement, all fines levied and collected were paid into the city treasury and the salary of the city justice was paid by the city. The petitioner was elected city justice at the general election held in November, 1930, and, it is alleged, has been since January, 1931, and now is, acting city justice of the peace of said city. On January 1, 1932, a new charter adopted by the city of San Diego, duly ratified and approved, went into effect containing provisions for a police court, of which the following are material here:

"Section 202. Jurisdiction of City Police Court. There is hereby created and established a Police Court for The City of San Diego, which shall have all the jurisdiction and exercise all the powers which are now or may hereafter be provided for Police Courts in cities by the General Laws of the State of California.

"Section 203. Qualifications of Police Judge. The Police Court of The City of San Diego shall be presided over by a Police Judge, who shall be elected by the qualified electors of said City once every four years. . . .

"Section 204. Salary. The Police Judge shall receive as compensation for his services such salary as shall be paid to Justices of the Peace of San Diego Township under the General Laws of the State of California.

"Section 209. Present City Court. The present City Justice of the Peace shall preside over the new Police Court established under this Charter until the end of his term of office, and shall continue to hold such office until a Police Judge is elected pursuant to the terms of this Charter at the regular Municipal Election to be held under this Charter in 1935."

The petitioner alleges that he has at all times entered into and discharged the duties of this new police court, as provided for in the city charter; that justices of the peace of San Diego Township are paid the sum of $5,000 per year; that a claim for his salary as said police judge has been regularly filed and presented; and that payment thereof has been refused. It appears that the salary of the city justice of the peace, to which office the petitioner was elected, is $3,000 per year. There is presented to this court a question as to the validity of section 209 of this charter, as to whether the city of San Diego or the county of San

Diego should pay the salary of petitioner, with the further question as to which salary applies in the event of a holding that the city should pay the same.

The respondent concedes that since the jurisdiction of the police court, created by the new charter, is not that of a "municipal court", as defined by section 8½ of article XI of the Constitution, its creation did not have the effect of abolishing the existing city justice's court. It is contended that two courts now exist, each presided over by the petitioner; that the city may no longer receive fines levied by the city justice court; that the expense of said city justice's court is now a proper charge upon the county; and that the city, authorized to expend city money in the exercise of municipal functions only, is precluded from paying any part of the expense of any court other than the new police court. It is then argued that since these two courts are presided over by one individual who can draw but one salary, he must be paid either by the city as police judge with the county receiving his services as justice of the peace without salary burden, or by the county as city justice with the city receiving free his services as a police judge. While the injustice of this situation is recognized, it is argued that the latter alternative is sanctioned by law.

It is conceded that the jurisdiction of this new police court is not coextensive with that of the existing city justice court. While the right of a city to create, through its charter, a court having exclusive jurisdiction over certain municipal matters is now thoroughly established, it is equally well settled that a court so created does not have the effect of abolishing a city justice's court created in accordance with the state law, unless its jurisdiction be coextensive therewith (*Church* v. *Board of Supervisors*, 211 Cal. 367 [295 Pac. 516]). Otherwise, the city justice's court continues as a part of the state system (*Graham* v. *Fresno*, 151 Cal. 465 [91 Pac. 147]). It is clear that the new charter of San Diego has achieved this result after the new police court created thereby is fully established through the election of a police judge in 1935. An attempt has been made to establish such a new police court during the intervening period which, if valid, creates the same situation. However, if these provisions for the interim are valid, during that period there will exist two courts, one created under the charter

and the other existing as part of the state system of justices' courts, both presided over by the same judge operating under a divided authority received from separate political subdivisions, with resulting services and benefits to each, while the entire salary burden rests upon one alone. The very statement of the situation thus attempted to be created calls for an inquiry as to the validity of the provision responsible therefor, and as to whether a city, in exercising the undoubted right given to it by the Constitution to create its own police court, has the right to thus invade the domain of another court, established and existing as a part of the state system, and to thus interfere with the working thereof.

It is contended that this dual arrangement is expressly authorized by section 6 of article XI of the Constitution permitting municipal functions to be performed by county officers, when the same is authorized both by a city charter and by a county charter or general law. It is argued that section 103 of the Code of Civil Procedure provides for the exercise of police court functions by city justices' courts, thus bringing this situation within this provision of the Constitution. As we have pointed out, these general provisions for the exercise of municipal police court functions by a city justice's court, while applicable in the absence of charter provisions for a police court, are ineffective and no longer apply to a particular city *after* such a police court is created by its charter (*Graham* v. *Fresno, supra; McClung* v. *Johnson,* 106 Cal. App. 264 [289 Pac. 199]). We find nothing in this, or any other, general law to justify a city, after removing itself from the operation of the general law, in taking over the services of a county or township officer on its own motion alone.

It is also argued that the positions of city justice of the peace and police judge under this charter are not incompatible, that the same person may hold both positions, and that this theory is inferentially supported by the case of *People* v. *Garrett,* 72 Cal. App. 452 [237 Pac. 829], since that case had reference only to a township justice court and a police court, and was decided on the ground that the people of a township were being deprived of a court to which they were entitled, while, in the instant case, both courts would remain although presided over by the same judge. So far as that case is of value here, it tends to support the

theory that a city, through the operation of its police court, may not interfere with the operation of a city justice court to which the people of the township are also entitled. But a somewhat different question is here presented with respect to the right of a city to create a new police court in such a manner that it can operate only by taking over the judge and partially or entirely destroying the efficiency of another court.

It is further argued that the arrangement here attempted is, in effect, merely continuing the former arrangement where the police court functions of the city were performed by the city justice's court in the absence of a charter provision; that the city justice of the peace is merely made an *ex-officio* judge of the police court of the city; and that this exact situation was approved in the case of *Milner* v. *Reibinstein*, 85 Cal. 593 [24 Pac. 935]. In that case it was held, in respect to the questions before the court, that the provisions of the state code governed. However, it does appear that the city charter had made no change in the existing situation because the court had theretofore held in *People* v. *Toal*, 85 Cal. 333 [24 Pac. 603], that these particular provisions of the city charter were null and void. If and when a new police court is established in San Diego, the city justice court still remains, although with a reduced field of jurisdiction, and a situation exists which is very unlike the former arrangement.

In the case of *Graham* v. *Fresno, supra,* while it was held that the constitutional amendment of 1896 empowered a city to provide by charter for its own police court, making a city supreme in that particular field, it was also pointed out in effect that this amendment was limited to police courts and did not authorize a city to trench in the slightest degree upon the power of the legislature to provide for city justices' courts as part of the state system. It was further held that where a city established such a police court by charter, an existing city justice court remained and the city justice of the peace continued as a county or township officer, performing no municipal functions, with his salary to be paid by the county. ■ While a police court thus established is controlled by the city charter and removed from the operation of corresponding provisions of general state laws, it is equally true that the remaining city justice

court is controlled by state laws and is unaffected by the provisions of a city charter, other than for a certain reduction in its jurisdiction. ■ Since the city has no power to abolish the city justice court or to take away its more general jurisdiction, it would seem to follow that the city may not accomplish the same result by bodily taking over the judge of such a court and making him a municipal officer, controlled and limited by the charter provisions. Such a city must be equally powerless to say what a city justice shall do with his time, in whole or in part. The provision of the San Diego charter, now under consideration, not only attempts to make this particular county or township officer also a city officer, performing extensive city functions, but there is an apparent intention that the city shall use practically his entire time and this, if the respondent's contentions are to prevail, without any expense to the city. While provision is made in our law for a state system of courts and for a separate and distinct city court, where properly established, we know of no provision of law authorizing such a hybrid system as is here proposed, with the same judge presiding over both courts, and no agreement or arrangement between the respective political subdivisions for a division of the benefits and burdens thereof.

A city has the undoubted right to establish a police court instead of using a city justice's court for certain municipal purposes, and whenever it does so, under our decisions, the corresponding portions of section 103 of the Code of Civil Procedure no longer apply to such a city. The city of San Diego has attempted to accomplish this result and has provided therefor after the city election to be held in 1935. In attempting to so provide during the interim, in respect to the most important requisite of such a court, the only provision made is one which is not only unauthorized by law but which actually interferes with and more or less destroys another court. We conclude that this may not be done and that this particular provision of the charter is not valid.

■ No valid provision having been made for the establishment of a new police court until after the election to be held in 1935, it follows that during the intervening period the charter has not replaced the state law, in the respect under consideration. In the meantime the state law governs, and the city justice court continues under the provisions of

section 103 of the Code of Civil Procedure, with the city paying the salary of the city justice as provided and fixed by state law.

■ Since any order we may make in such a proceeding as this is limited by the exact terms of the alternative writ issued (*Gay* v. *Torrance*, 145 Cal. 144, at 153 [78 Pac. 540]), an order covering the matter of petitioner's salary as city justice may not be entered herein. For the reasons given, the application for a peremptory writ of mandate is denied.

Marks, J., and Jennings, J., concurred.